**Walter SEIDEMAN**
v.
**Anne HAMILTON.**
Civ. A. No. 20589.

United States District Court
E. D. Pennsylvania.
June 2, 1959.

Richter, Lord & Levy, Philadelphia, Pa., for plaintiff.

Harry F. Brennan, Philadelphia, Pa., for defendant.

CLARY, District Judge.

The Court has for consideration defendant's motion to dismiss for lack of

diversity jurisdiction, 28 U.S.C.A. § 1332 (a) (1).

Plaintiff, a citizen of Pennsylvania, was injured while driving an automobile which collided with a car driven by the defendant. In this action, based on diversity, plaintiff contends that the defendant was a citizen of the State of Delaware at the time suit was instituted. Both in her answer and by virtue of this motion, defendant has contraverted this assertion and has pleaded instead Pennsylvania citizenship. Upon order of the Court a hearing was held on this question at which both sides were given an opportunity of presenting evidence on the point. The oral testimony of the defendant taken at the hearing and her deposition taken previously constitute all the evidence adduced.

 Heeding the admonition of Chief Judge Biggs in the case of Underwood v. Maloney, 3 Cir., 1958, 256 F.2d 334, at page 340, that the issue of jurisdiction should be determined in limine by a trial court, the first question raised is whether the issue is one for determination by the court or by a jury. That it may be determined by the court without reference to a jury seems clear from the ruling in Guarantee Trust Co. v. Collings, 3 Cir., 1935, 76 F.2d 870, certiorari denied 1935, 295 U.S. 747, 55 S.Ct. 825, 79 L.Ed. 1692; see also Gilbert v. David, 1915, 235 U.S. 561, 568, 35 S.Ct. 164, 59 L.Ed. 360. Indeed, it is appropriate that the court alone should pass on a question of this nature. There must be recognition of the principle that jurisdiction in diversity cases is to be strictly construed; see Thomson v. Gaskill, 1942, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951. Citizenship, for jurisdictional purposes, is equivalent to "domicile"; see Brown v. Keene, 1834, 8 Pet. 112, 8 L.Ed. 885; Brown v. Fennell, D.C.E.D.Pa. 1957, 155 F.Supp. 424, 425; Hart & Wechsler, The Federal Courts and The Federal System 898 (1953). The determination of the question "domicile", certainly not a term of precise meaning, usually arises in divorce litigation and cases of devolution of certain types of property. An examination of precedent indicates that the determination of this question has usually been vested in the court rather than a jury. Should the court lack jurisdiction a trial would be a nullity. Hence, the necessity of a preliminary determination before proceeding with a long and costly trial. See Underwood v. Maloney, supra.

It has been suggested that the recent case of Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988, might indicate a different result. An examination of that case, however, shows that the question involved was one of right of trial by jury and not jurisdiction. There, jurisdiction was admitted; here, it is challenged. The Court will, therefore, proceed to a determination of the issue on the record presented in this case.

The evidence as disclosed by the record shows the following: Defendant, born in Philadelphia, moved to Newark, Delaware, with her parents, in 1927. In 1941 she returned to attend the University of Pennsylvania. While at the University she spent weekends with her parents in Newark. After completing her studies in 1943, she obtained employment in and established residence in Pennsylvania. In October 1951 she married a Pennsylvania citizen and resided in Philadelphia until June 1952 when the couple moved into the husband's house in Jenkintown, Pennsylvania. After defendant's husband died in November 1954, she continued living at the Jenkintown address, and at some later time purchased the house from her husband's estate. She testified that soon after his death real estate agents began harassing her to place the house for sale and to relieve this constant pressure she quoted them an exorbitant price she was certain could not be obtained, but with no serious idea of selling. She last voted in Pennsylvania in 1955; after 1957 her name was expunged from the voting lists for failure to vote for two successive years, although she had attempted unsuccessfully to secure an absentee ballot in 1956 while vacationing abroad.

The accident giving rise to the present litigation occurred in October 1955. At the time, defendant possessed a Delaware driver's license which listed her address as that of her parents in Newark. She explained that it was a permanent license of the type authorized by Delaware Law, requiring neither renewal nor payment of an annual fee;[1] and that she procured it soon after they were made available. Delaware Law also provides that notice shall be given in the event of a change of address.[2] Failure to comply, while entailing certain penalties, does not result in revocation of the license. Defendant disclaimed any knowledge of this requirement.

The first time defendant was in the State of Delaware subsequent to her husband's death was around Christmas 1955. Between that date and March 1956 she spent approximately three (3) days there. In March 1956 she began extensive travel abroad, returning to the United States in August 1956. It was during this period, on April 24, 1956 that suit was filed. In September 1956 she again travelled abroad. Before leaving she gave the key to her house to a real estate broker named Connor. The purpose of the transaction, according to defendant, was to enable Connor to look after the house during her absence. Following her return to the United States in January 1957, she resumed occupancy of the house. From then until April 3, 1958 she visited her parents in Newark once a month, the duration of each stay being about one and one-half days, as well as spending many weekends in New York and Washington. In March 1958 Connor notified her of an offer that had been made to purchase her home. Although defendant contended that there had been no serious prior negotiations with Connor concerning sale—aside from the rather general statement she made to a number of brokers mentioned above—she accepted the offer; and on April 3, 1958

vacated the house, eventually settling in Maryland.

Defendant admitted that throughout her marriage and thereafter she had an account in a Newark bank, and had received third-class mail at her parents' address. The account dated from the time she was eight (8) years old. Although it lay dormant during her marriage, she resumed deposits after her husband's demise. Defendant attributed the Delaware addressed mail to the failure of many people to be aware of her marriage. She strenuously insisted that at no time prior to March 1958, when the offer to purchase her home was made, did she entertain any intention of living other than in Pennsylvania. Until then, she planned to spend the rest of her life in Jenkintown.

■■ Diversity is controlled by the status of the parties at the time suit is begun. See Smith v. Sperling, 1957, 354 U.S. 91, 93 note 1, 77 S.Ct. 1112, 1 L.Ed. 2d 1205; Brown v. Fennell, supra. In the instant case, defendant's marriage conferred upon her the citizenship of her husband. See Price v. Greenway, 3 Cir., 1948, 167 F.2d 196, 199; Seegers v. Strzempek, D.C.E.D.Mich.1957, 149 F. Supp. 35, 37. Thus, at least until the death of her husband in November 1954, defendant was a citizen of Pennsylvania. Unless a change of domicile took place before the complaint was lodged dismissal must follow. Plaintiff has made no attempt to argue that defendant's domicile was other than Pennsylvania or Delaware. Indeed, were such a theory advanced it would meet immediate rejection in view of the total absence of evidence linking defendant with any state but these. Our inquiry, therefore, is limited to the question whether she effected a change of domicile from Pennsylvania to Delaware.

■ Much of plaintiff's argument appears to be premised upon the idea that

---

1. See Del.Code Ann.Tit. 21, § 2714 (Supp. 1958). Authority for the issuance of permanent licenses was first granted in 1945. See 45 Del.Laws, Cc. 282, 288 (1945).

2. Del.Code Ann.Tit. 21, § 320 (1953).

one may change his domicile by merely intending to do so. This is not the law. In the posture of this case, change would necessitate physical presence in the new domicile with the concurrent intent to live there for an indefinite period of time; or, stating the latter essential negatively, with the absence of any intent to live elsewhere. See Williamson v. Osenton, 1914, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758; Gallagher v. Philadelphia Transp. Co., 3 Cir., 1950, 185 F. 2d 543, 546; Goodrich Conflict of Laws, pp. 60–61 (3d Ed. 1949). The domiciliary formula, therefore, contains both tangible and intangible components. Here, defendant was admittedly present in Delaware for three (3) days during the relevant period. Assuming that this was of sufficient duration to supply the tangible ingredient, the elusive element of intent becomes crucial. The intent sought to be discovered is that existing at the time defendant was physically present in Delaware.

The factors that might be thought to prompt a finding favorable to the plaintiff are few and unconvincing. When analyzed and balanced against the remaining evidence, the conclusion is inescapable that plaintiff was domiciled in Pennsylvania at the time suit was instituted. The Delaware driver's license is a tenuous foundation for inference in view of the fact that retention entailed no action on the part of defendant. Similarly, whatever the import of her failure to notify the Delaware authorities of a change of address might otherwise be, the Court considers it nugatory in light of her lack of knowledge of the statutory provision. The fact that mail continued to be addressed to defendant at her former Delaware residence is not a very unusual feature, particularly since she had been married a comparatively short time. That it resulted from a mistake concerning defendant's marital status is attested to by the fact that most of her mail was received in Jenkintown. The resumption of deposits in the Newark bank, standing alone, may be suggestive of a renewed attachment to the area. Conversely, during the identical period defendant had an active account in Jenkintown upon which she drew for the payment of her expenses. The statement made by defendant to several brokers that she would sell her house if a given price was obtained, and the gesture of entrusting Connor with the key while she was abroad, are somewhat equivocal indicia. As explained by defendant, they are virtually of no significance; with the gloss placed upon them by plaintiff they at best suggest that defendant may have had a nebulous notion of moving at some future date. The latter, however, does not suffice; for one must actually sever contact with the old domicile and adopt the new.

More weighty data support the defendant's contention. Until April 3, 1958 her living quarters were in her Jenkintown house. While she was sojurning in foreign lands a maid regularly saw to the upkeep of the house, and the utilities were never turned off. Moreover, not only did defendant vote in Pennsylvania in 1955, but she attempted to procure an absentee ballot for the November 1956 Presidential election thereby indicating that she still considered herself a Pennsylvanian. The short duration of her stays in Delaware is more suggestive of a visit than a permanent connection. Finally, there is the flat assertion of defendant—credited by the Court—that she had no intention of leaving Pennsylvania.

Since the Court finds, upon an examination of the entire record, that defendant was a citizen of Pennsylvania when the action was initiated, dismissal is mandatory. An appropriate order, therefore, will be entered.