Paul STEINER

v.

DAUPHIN CORPORATION.

Civ. A. No. 30149.

United States District Court
E. D. Pennsylvania.

July 3, 1962.

Martin Greitzer, for Takiff & Bolger, Philadelphia, Pa., for plaintiff.

Harvey Levin, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

BODY, District Judge.

This is an action brought by Paul Steiner, a Pennsylvania citizen, against Dauphin Corporation (Dauphin) which is a holding company incorporated during 1959 in the State of Delaware. The suit is based on an alleged breach of contract. There is diversity and the amount in controversy exceeds the jurisdictional requirement.

Suit was instituted on August 24, 1961. Subsequently the plaintiff served one Grant Fosnocht personally in this district at an office in Sinking Spring, Berks County, Pennsylvania. Mr. Fosnocht is and was at the time of service an officer and a director of Dauphin.

Counsel for Dauphin has filed a motion to dismiss the action or in the alternative to quash the service of the summons and complaint. It is contended that venue is improper and that there is no jurisdiction.

The record before this court consists of the complaint, the service return, an affidavit and depositions of Mr. Fosnocht and an affidavit of Henry A. Hofmann, both of whom are directors of Dauphin.

During the organization of Dauphin in 1959 and 1960, daily transactions were carried on in Pennsylvania; records were kept in Sinking Spring; correspondence was carried on there; checks were drawn in Pennsylvania and "Sinking Spring, Pa." appeared on the stationery and on a notice of a shareholders' meeting. While there were meetings of shareholders and directors in Pennsylvania before

June 14, 1960, there have been no shareholders' meetings in Pennsylvania since that date and no directors' meetings since April 1961.

On June 14, 1960 the shareholders held a meeting in Wilmington, Delaware. This date marks a transfer of substantially all activity from Pennsylvania. An office for Dauphin was opened in Washington, D. C. By July 1960 all the records were in that office. Thereafter, the company affairs were handled from the Washington office. Banks other than Pennsylvania banks were used and the stationery bears the Washington address. Directors' meetings since April 1961 were held in New York.

Dauphin has no employees or assets, performs no services, and solicits no business in Pennsylvania and never has, except for the matters described.

Mr. Fosnocht and Mr. Hofmann, residents of Pennsylvania, are officers as well as directors of both Dauphin and a wholly owned Pennsylvania subsidiary corporation of defendant. Neither man has received any compensation from Dauphin nor has either engaged in any physical activity on behalf of the holding company in Pennsylvania since January 1, 1961.

Dauphin directly or indirectly owns three Pennsylvania subsidiaries which have done or now do business in Pennsylvania.[1] Defendant maintains two bank accounts in Pennsylvania which contain purely nominal balances. These accounts were opened during the period of organization and were reduced by withdrawals to nominal sums before the complaint was filed.

The agreement upon which the plaintiff bases his suit arises out of a building enterprise in Alabama. Dauphin was organized expressly to engage in this activity, plaintiff was engaged to perform services there, and the Pennsylvania subsidiaries were acquired for the same purposes.[2]

Plaintiff contends that despite the transfer of activity from Pennsylvania, there are sufficient facts to establish that Dauphin was amenable to service in this district since it was doing business in Pennsylvania when the complaint was filed. Plaintiff contends further that service on the officer of Dauphin was proper personal service on the corporation in Pennsylvania. These contentions are based solely on the maintenance of the two nominal and inactive bank accounts, the ownership and control by Dauphin of the Pennsylvania subsidiaries, and the fact that there are interlocking directorates and identity of some officers, including Mr. Fosnocht, who are Pennsylvania residents.

The activity which plaintiff cites as sufficient for a finding of doing business is the "thinking and action with respect to the parent and the wholly owned subsidiaries. * * * When dealing with a corporation of this type we must consider mental activity and not physical activity as the test of doing business."[3]

The plaintiff further urges that this court should refrain from deciding the issues now and instead should allow a jury to determine at trial whether Dauphin was doing business in Pennsylvania.

▮ Defendant maintains that venue is improper under the requirements of § 1391(c) of the Judicial Code (28 U.S.C.) and also that service was insufficient to give this court personal jurisdiction.

Since Dauphin was never registered to do business in Pennsylvania and was never incorporated in Pennsylvania, the only question is whether the holding company was doing business in fact in Penn-

---

1. They are William Langhorne, Inc. and National Properties, Inc. which in turn wholly owns Hatboro Industrial Park.

2. Plaintiff here is a defendant in a suit brought by Dauphin in the District of Delaware which suit is also based on the Alabama enterprise.

3. Page 2 of the plaintiff's brief.

sylvania at the time the suit was instituted on August 24, 1961. Plaintiff concedes that this is the basic issue.[4]

■ As to the contention that the court in its discretion should let a jury decide whether Dauphin was doing business in Pennsylvania, it is sufficient to say that there are no outstanding questions of fact. However, assuming the question of whether the mental activity of Dauphin's officers and directors who are in Pennsylvania meets the requirements of venue and of jurisdiction is a question of fact, it is a question which should properly be decided by the court preliminarily to prevent a useless trial. Seideman v. Hamilton, 173 F.Supp. 641 (E.D.Pa.1959), aff'd in 275 F.2d 224 (3d Cir. 1960), cert. den. 363 U.S. 820, 80 S.Ct. 1258, 4 L.Ed.2d 1517 (1960).

■ While the concept of doing business has been liberalized in recent years, McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), this liberalization is in reference to the minimum contact required previous to a proper exercise of jurisdiction by a state under its service statute. The state, in this case Pennsylvania, may set the minimum contact required above the level required by the due process clause of the 14th Amendment. When the state does so, the stricter requirement governs whether the party was doing business. This is true as to venue, Remington Rand, Inc. v. Knapp-Monarch Company, 139 F.Supp. 613 (E.D.Pa. 1956), as well as to jurisdiction, Elliott v. United States Steel Export Co., 186 F.Supp. 57, 58–59 (E.D.Pa.1960).

Pennsylvania defines "doing business" as:

"* * * the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a

single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts * * *."

Pa.Stat.Ann., tit. 15, § 2852–1011, subd. C; P.L. 1406, Nov. 10, 1959; 15 P.S. § 2852–1011, subd. C.

Applying this test first to the bank accounts it becomes apparent that while the accounts may have been opened with the "* * * intention of thereby initiating a series of such acts * * *" they were not left open with that intention. It appears rather that at most the accounts were left with nominal balances in case Dauphin might in the future intend to do business in Pennsylvania. The cases plaintiff cites involve active bank accounts as well as other concurrent activities. See for example, General Electric Co. v. Central Transit Warehouse Co., 127 F.Supp. 817 (W.D.Mo.1955).

■■ The mere fact that a holding company acquires subsidiaries in a state does not without more subject the parent to jurisdiction. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1924); Proctor v. The Sagamore Big Game Club, 128 F.Supp. 885 (W.D.Pa.1955); Echeverry v. Kellogg Switchboard & Supply Co., 175 F.2d 900 (C.A.2 1949). Nor is service on a common officer of both the parent and subsidiary corporation, who resides in the state of service, proper service on the parent. Proctor v. Sagamore Big Game Club, supra.

That doing business may consist of mental activity is difficult to accept in the face of the rule that service on an officer is not sufficient merely because he is an officer of both companies. The reason is that if we presume here that the officers carried on mental activity for the parent, then always officers will be presumed to do so. The inevitable result would be a finding that owning a sub-

---

4. Plaintiff does not contend that doing business before the institution of suit is sufficient. Concurrent residence is required

for proper venue. Lipp v. Janson, 198 F. Supp. 195 (E.D.Pa.1951).

sidiary with officers common to the parent, will subject the parent to jurisdiction and venue wherever the subsidiary does business.

 Inactive and nominal bank accounts taken with the mental activity of common officers equals no more than either alone, and the total is less than the requisite for doing business.

### ORDER

AND NOW, July 3, 1962, IT IS ORDERED that the motion of defendant Dauphin Corporation to dismiss be, and the same is hereby granted.