ALBERT LEVINE ASSOCIATES, a co-partnership consisting of Albert Levine and Arnold H. Levine, doing business under the said assumed name, Plaintiffs,

v.

BERTONI & COTTI et al., Defendants.

No. 68 Civ. 4238.

United States District Court,
S. D. New York.

Jan. 21, 1970.

---

Albert Levine, Jamaica, N. Y., for plaintiffs.

Bisco, Winkler & Higgiston, New York City, for defendants Shaul Equipment & Supply Co., Inc., George Holder and Lester W. Ginanni; John E. Higgiston, Jr., New York City, of counsel.

## OPINION

COOPER, District Judge.

Defendants, Shaul Equipment and Supply Co., Inc. (hereinafter "Shaul"), George Holder (President of Shaul), and Lester W. Ginanni (General Manager and Ass't. Treasurer of Shaul) move pursuant to Rule 12(b) F.R.Civ.P. to quash service of process and dismiss the pending action brought under § 4 and § 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

Plaintiff, "a co-partnership doing business in New York" claims that it was engaged in the business of importing and selling of replacement parts for crawler tractors to various distributors throughout the United States. It alleges [1] that Bertoni & Cotti, S.p.A., a foreign corporation located in Italy, the manufacturers of "Berco" tractor replacement parts, entered into a combination conspiracy and agreement with plaintiff's competitors, thirteen other corporations and individuals, all foreign corporations or residents of foreign states except one corporate defendant and one individual defendant who alleg-

[1]. See Affidavit in Opposition to Motion to Dismiss Complaint, by Albert Levine, January 2, 1969.

edly reside in New York, to refuse to sell its products to plaintiff. To effectuate this conspiracy, plaintiff alleges that all of the defendants met in New York City for three days, on or about October 30, 31, and November 1, 1965; and that as a result of this meeting the illegal agreement was entered into, and such agreement has interfered with and injured plaintiff's business.

Plaintiff sought to obtain service of process of the moving defendants by serving the individual defendants personally in Pennsylvania, and by personally serving defendant Holder in his corporate capacity as President of Shaul, effect service on the corporation.

The defendants now move to quash this service of process and dismiss the action on the grounds that plaintiff failed to obtain in personam jurisdiction and that venue has been improperly laid in the Southern District.

*Venue under the Clayton Act*

The Clayton Act specifically provides venue requirements for both individual and corporate defendants:

Section 4 of the Clayton Act (15 U.S. C. § 15)

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy * * *

Section 12 of the Clayton Act (15 U.S. C. § 22)

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district

wherein it may be found or transacts business: * * *

From the papers before us we find neither Holder or Ginanni resides, is found, or has an agent in the Southern District,[2] and Shaul neither an inhabitant nor found here. However, as to the corporate defendant Shaul, the question remains whether the venue requirement of § 12 is satisfied by Shaul's "transacting of business" within this district.

While the term "transacts business" was intentionally added by Congress to broaden venue in antitrust cases and allow an aggrieved party a larger number of available forums, the term has not been considered as providing plaintiff with an unlimited choice. Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa.1966); Commonwealth Edison Co. v. Federal Pacific Elec. Co., 208 F.Supp. 936 (N.D.Ill. 1962). Soon after § 12's enactment, the Supreme Court defined the standard to be applied when determining whether a corporation transacted business within a jurisdiction: "* * * if in fact, in the ordinary and usual sense, it transacts business therein of any substantial character." Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 373, 47 S.Ct. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Rhode Island Fittings Co. v. Grinnell Corp. J.D., 215 F.Supp. 198 (D.R.I. 1963). Each case of this kind is governed by its individual facts as applied to this "practical, nontechnical, business standard." United States v. Burlington Industries, Inc., 247 F.Supp. 185, 188 (S.D.N.Y.1965); Abrams v. Bendix v. Scophony Corp. of America, 333 U.S. Home Appliances, Inc., 96 F.Supp. 3 (S. 400, 71 L.Ed. 684 (1927); United States D.N.Y.1951).

---

2. The undisputed affidavit of George Holder and Lester W. Ginanni states that both are residents of Pennsylvania, that neither has an office or place of business in New York, nor employs any agent in New York. The mere fact that the individual defendants, in their corporate capacity, came to New York for three days during which an alleged conspiracy against the plaintiff was entered into, does not bring them within the venue basis of § 4.

The affidavit of George Holder, filed in support of the motion, states that Shaul is "in the business of selling and servicing heavy construction equipment and replacement parts;" is a Pennsylvania Corporation with its principal office there; all Shaul stockholders and officers are Pennsylvania residents; Shaul is neither licensed to do business in New York, nor does any business in New York; owns no property in New York; has no agents, resident representative, or "any other type of representative" in New York; has no dealer jobbers or independent contractors located in New York or representing it in the sale of merchandise in New York; sends no salesman or other representative into New York, or in any way solicits sales in New York; and maintains no branch plant, office, showroom or salesroom in New York. Holder further states that Shaul has "primarily a local intrastate business, sales for the most part being concentrated within the area of the company's main office;" that "on occasion" Shaul receives out of state orders for replacement parts which it fills by shipment from its Pennsylvania plants; that from 1965, the date the alleged conspiracy originated until the present, Shaul's only sales in New York were to "two fellow distributors who submitted unsolicited orders to fill gaps in their inventories" totaling approximately $14,000; that absolute sales during the same period amounted to nearly $2,000,000.

The plaintiff, in rebuttal, submits that "jurisdiction against all of the defendants herein is based upon the defendant's committing a tortious act[3] within the State of New York," and that pursuant to the New York long-arm statute, N.Y.C.P.L.R. §§ 302(a) (2),

313, "jurisdiction" over all defendants was properly obtained by personal service in Pennsylvania. Despite plaintiff's apparently exclusive reliance on this theory, he also alleges that defendant Shaul transacted business in New York by "openly soliciting trade by national advertisement" and "by having a dealer for the resale of their Berco parts in the State of New Jersey who as defendant's agent solicits and transacts business in the State of New York, with shipment of Berco parts."

This Court, in a prior memorandum,[4] requested the parties to furnish additional information concerning defendant's business activities in New York, specifically directing plaintiff to submit evidentiary amplification of its "conclusory" and "unsupported" statements concerning the relationship between defendant and their alleged New Jersey "agent." Plaintiff apparently failed to comprehend the significance of the data requested by the Court, and continued its misplaced reliance on the theory "I stress again the fact that jurisdiction is relied upon herein exclusively upon the commission of a tortious act within the city and state of New York."[5]

Thus, upon a review of all the facts as presented in the memoranda and affidavits submitted, there are only three relevant connections between defendant and New York which could support a finding that defendant transacts business here: its direct sales into New York, its alleged "agents" business in New York, its national advertising.[6]

As previously noted, Shaul sold replacement parts "to two fellow distributors who submitted orders to fill gaps in their inventories" amounting to

---

3. Plaintiff argues that defendants' presence at the New York meeting and alleged participation in the combination, conspiracy or agreement in violation of the Federal Antitrust law constitutes the commission of a tortious act at the site of the meeting.

4. See Memorandum, Judge Herlands, 68 Civ. 4238, July 8, 1969.

5. See letter of Albert Levine, July 22, 1969.

6. While it may be argued that the alleged entry into a conspiracy within the jurisdiction may also be a relevant factor, it is certainly clear that this factor by itself, or when added to the above three, could not constitute transaction of business.

approximately $14,000 out of sales totaling nearly $2,000,000. While the dollar figure or percentage of sales are means of measuring the substantiality of business contacts, of equal importance is the type of product involved in the sales, the continuity with which the sales are conducted, and the manner in which the sales are obtained. *School Dist. of Philadelphia v. Kurtz Bros.*, 240 F.Supp. 361 (E.D.Pa.1965). We find these two isolated unsolicited sales, amounting to only a minute fraction of defendants' overall business, do not amount to transaction of business.

Further, plaintiff's allegations that Cook Industries served as defendant's agent to solicit and fill orders in New York remains uncorroborated. In fact, the letter agreement between Shaul and Cook, apparently providing for Cook to operate as an independent distributor of Berco parts purchased on a consignment basis from Shaul, explicitly restricted Cook's operation to territory in Eastern Pennsylvania and South Jersey.

■ Finally, national advertising which finds its way into a particular jurisdiction is insufficient to support a finding of transaction of business. Cf. *Reeder Contractors of Arizona v. Higgins Industries, Inc.*, 265 F.2d 768 (9th Cir.1959); *MacInnes v. Fontainebleau Hotel Corp.*, 257 F.2d 832 (2d Cir.1958).

■ Therefore, we conclude that the totality of defendant Shaul's activities in New York is insufficient to support a finding that it transacted business here. The cumulative activities of Shaul has failed to satisfy § 12's venue requirement. *Stern Fish Co. v. Century Sea-*

foods, Inc., 254 F.Supp. 151 (E.D.Pa. 1966) ("some amount of business continuity and certainly more than a few isolated and peripheral contacts"); *Rhode Island Fittings Co. v. Grinnell Corp.*, J. D., 215 F.Supp. 198 (D.R.I.1963) ("of a substantial character, and it must have some degree of continuity"); *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.*, 129 F.Supp. 425 (E.D.Pa. 1955) ("substantial business operation"); *Commonwealth Edison v. Federal Pacific Elec. Co.*, 208 F.Supp. 936 (N.D.Ill.1962) ("elements of substantiality of business done, with continuity in character, regularity").[7]

### *Venue under 28 U.S.C. § 1391*

Section 1391 provides the general venue requirements for federal district courts. The relevant sections are:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, *or in which the claim arose*, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

There appears to be some uncertainty as to whether § 1391 supplements the specific venue provisions of the Clayton Act, or whether the Act is the exclusive reference.[8] However, even assuming ar-

---

7. Because we find Shaul was not and is not transacting business in the Southern District of New York, we need not reach the issue of whether transaction of business need occur at the time the cause of action arose, or the commencement of the suit.

8. In *Fourco Glass Co. v. Transmirra Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), the Supreme Court concluded that § 1391 was inapplicable to patent infringement claims which was governed

exclusively by § 1400. However, the Court appears to have limited *Fourco* to its facts, *Pure Oil Co. v. Suarez*, 384 U. S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1965), but see *Leith v. Oil Transport Co.*, 321 F.2d 591 (3rd Cir. 1963). In *Hoffman Motors Corp. v. Alfa Romeo, S.p.A.*, 244 F.Supp. 70 (S.D.N.Y.1965), the Court held § 1391 supplemented the antitrust venue provisions, citing *Auburn Capitol Theatre Corp. v. Schine Chain Theatres, Inc.*, 83 F.Supp. 872 (S.D.N.Y.

guendo, that § 1391 can be used as an alternative basis for upholding venue in an antitrust action, we are still unable to find proper venue in this district.

■ Subsection (b) by its terms, becomes inoperative when venue is regulated by another statutory provision.[9]

■ Subsection (c) requires a determination of whether Shaul is "doing business" in New York. While the exact standard as to what constitutes "doing business" has been subject to various interpretations,[10] the relevant factors to be weighed are similar to those considered in determining transaction of business. We find the combined activities of Shaul insufficient to satisfy the minimal level of business activity required by § 1391's standard of doing business. Frazier III v. Alabama Motor Club, Inc., 349 F.2d 456 (5th Cir.1965); Control Data Corp. v. Carolina Power & Light Co., 274 F.Supp. 336 (S.D.N.Y. 1967); Lumberman's Mutual Casualty Co. v. South Portland Engineering Co., 252 F.Supp. 149 (S.D.N.Y.1966); Colgate-Palmolive Co. v. North American

Chemical Corp., 238 F.Supp. 81 (S.D.N.Y.1964).

### The Conspiracy Theory

■ The final suggested basis for supporting venue in the Southern District is under the theory that each co-conspirator acts as an agent for all participants in the conspiracy and the presence of a single co-conspirator within the jurisdiction confers both jurisdiction and venue over the non-resident conspirators. See e.g., Ross-Bart Port Theatre Inc. v. Eagle Lion Films, Inc., 140 F. Supp. 401 (E.D.Va.1954); Giusti v. Pyrotechnic Industries, 156 F.2d 351 (9th Cir.1946). This Circuit has specifically rejected this rule. Bertha Building Corp. v. National Theatres Corp., 248 F.2d 833 (2d Cir.1957), cert. denied, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958); H. L. Moore Drug Exchange, Inc. v. Smith, Kline and French Lab., 384 F.2d 97 (2d Cir.1967). See also, Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 1953); Independent Productions Corp. v. Loew's Inc., 148 F.Supp. 460 (D.C.N.Y.1957).

1949); Anderson-Friberg, Inc. v. Justin R. Clary & Son, 98 F.Supp. 75 (S.D. N.Y.1951).

9. None of the defendants are New York residents. Further, it is entirely unclear whether the "claim arose" in the Southern District. A cause of action under the antitrust laws can be considered as arising not from the mere combination or conspiracy, but from the injuries proximately resulting from the conspiracy. Electric Theater Co. v. Twentieth Century-Fox Corp., 113 F.Supp. 937 (W.D. Mo.1953). Plaintiff fails to specify where he acted as distributor of Berco parts, the place of injury to his business; indeed, from defendant's affidavit it appears plaintiff sold Berco parts only in Nebraska. Further, the overt acts by these defendants in furtherance of the alleged conspiracy may well have occurred only in Pennsylvania where Shaul allegedly refused to deal with plaintiff. Finally, to read into § 12 of the Clayton Act § 1391(b), providing for venue where the claim arose, would introduce an entirely new concept of venue into antitrust law. The congressional retention of the limit-

ing language "except as otherwise provided by law" indicates this result was not intended.

10. Some courts have found a corporation doing business if it would be amenable to process under state law. Steiner v. Dauphin Corp., 208 F.Supp. 104 (E.D.Pa.1963). Other courts consider the amount of activity necessary to warrant a finding of doing business should be less than that required by the jurisdictional standard. Friedman v. United States Trunk Co., 204 F.Supp. 366 (S.D.N.Y.1962) aff'd, 367 F.2d 583 (2d Cir. 1966); Sunbury Wire Rope Mfg. Co. v. United States Steel Co., 230 F.2d 511 (3rd Cir. 1956). Still other courts consider doing business as the equivalent of transaction of business. Friedman v. United States Trunk Co., supra. Finally, on the basis of the section's legislative history, some cases define doing business as that degree of activity requiring the corporation to obtain a license. Farr's Inc. v. Nat'l Shoes, Inc., 191 F.Supp. 803 (E.D.Pa.1960); Rensing v. Turner Aviation Corp., 166 F.Supp. 790 (N.D.Ill.1958).

### Disposition

Thus we conclude that venue has been improperly laid against all three defendants in this district.[11] However, pursuant to 28 U.S.C. § 1406(a), we order the action, in so far as it is brought against the three moving defendants, severed and transferred to the Middle District of Pennsylvania. A finding of jurisdiction is unnecessary to the transfer of a case under 28 U.S.C. § 1406. Goldlawr Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); Control Data Corp. v. Carolina Power & Light Co., *supra*. In light of such transfer to the Middle District of Pennsylvania where venue is proper and where the defendants are amenable to process, the personal service in Pennsylvania is adequate to confer jurisdiction on the transferee court.

Accordingly, the Court hereby orders that this action against Shaul Equipment & Supply Co., George Holder, and Lester W. Ginanni be severed from the main action and transferred to the Middle District of Pennsylvania.

This shall be considered an order; settlement thereof is unnecessary.

So ordered.

---

11. Since we find improper venue, it is unnecessary to determine the complex question of whether plaintiff has obtained in personam jurisdiction over the defendants in New York.