PURE OIL CO. *v.* SUAREZ.

No. 692. Argued April 19, 1966.—Decided May 16, 1966.

*Eberhard P. Deutsch* argued the cause for petitioner. With him on the briefs was *René H. Himel, Jr.*

*Arthur Roth* argued the cause for respondent. With him on the brief were *S. Eldridge Sampliner* and *Charlotte J. Roth.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Respondent Suarez is a seaman who was employed on the S. S. *Pure Oil,* owned and operated by petitioner, Pure Oil Company. Suarez brought this action against the company in the United States District Court for the Southern District of Florida to recover damages for personal injuries allegedly suffered in the course of his employment. He sued in negligence under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688 (1964 ed.), and alternatively on the theory that the vessel was unseaworthy. The Pure Oil Company moved to transfer the case to the Northern District of Illinois on the ground that venue was improper in Florida. The District Court

denied the motion, certifying the question of venue for interlocutory appeal to the Court of Appeals under 28 U. S. C. § 1292 (b) (1964 ed.). That court affirmed the ruling of the District Court, 346 F. 2d 890. Certiorari was granted, 382 U. S. 972, in order to determine whether the decision below is inconsistent with this Court's decision in *Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U. S. 222, and to resolve a conflict among the circuits on that score.[1] We do not find the *Fourco* case controlling, and affirm the judgment of the Court of Appeals.

The Jones Act, which ultimately governs the venue issue before us,[2] contains the following provision:

> "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U. S. C. § 688.

Preliminarily it should be noted that although this provision is framed in jurisdictional terms, the Court has held that it refers only to venue, *Panama R. Co.* v. *Johnson*, 264 U. S. 375. It is conceded that as enacted and originally interpreted the statute would not authorize Florida venue in this instance, for corporate residence traditionally meant place of incorporation, in this case Ohio, and Pure Oil's principal office is in Illinois. The Court of Appeals held, however, that residence had been redefined by the expanded general venue statute,

---

[1] Compare the Third Circuit's decision in *Leith* v. *Oil Transport Co.*, 321 F. 2d 591, with the Fourth Circuit's decision in *Fanning* v. *United Fruit Co.*, 355 F. 2d 147, which followed the Fifth Circuit's decision in the present case.

[2] The Court of Appeals stated that the Jones Act venue provision must be met if, as here, an action is based on both unseaworthiness and the Jones Act, 346 F. 2d, at 891. Because of our disposition of the case we find no occasion to pass upon this issue, which was not raised in this Court.

28 U. S. C. § 1391 (c) (1964 ed.), passed in 1948. That statute provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the *residence* of such corporation for venue purposes." (Emphasis added.)

If this definition of residence is applicable to the Jones Act venue provision, it is conceded that the action was properly brought in Florida, where Pure Oil has transacted a substantial amount of business. We hold that this definition does so apply and that venue in Florida was proper.

The effect of § 1391 (c) was to broaden the general venue requirements in actions against corporations by providing a forum in any judicial district in which the corporate defendant "is doing business." See Moore, Commentary on the Judicial Code 193–194 (1949); 1 Barron & Holtzoff, Federal Practice and Procedure § 80, at 386 (Wright rev. 1960). It seems manifest that this change was made in order to bring venue law in tune with modern concepts of corporate operations.[3] The question here involves the reach of these changes. The redefinition of corporate residence clearly touches the general diversity and federal-question venue provisions of §§ 1391 (a) and (b). Although there is no elucidation from statutory history as to the intended effect of § 1391 (c) on special venue provisions, the lib-

---

[3] As the Court of Appeals stated in *Transmirra Prods. Corp.* v. *Fourco Glass Co.*, 233 F. 2d 885, 887, "The rationale of this sharp break with ancient formulae is quite obviously a response to a general conviction that it was 'intolerable if the traditional concepts of "residence" and "presence" kept a corporation from being sued wherever it was creating liabilities.'" Although this Court reversed in *Fourco, supra,* for reasons discussed later (*infra,* pp. 206–207), the validity of this general observation was in no way questioned.

eralizing purpose underlying its enactment and the generality of its language support the view that it applies to all venue statutes using residence as a criterion, at least in the absence of contrary restrictive indications in any such statute.

˙ This view of § 1391 (c) is basically consistent with the purposes and language of the Jones Act, whose thrust was not primarily directed at venue, but rather at giving seamen substantive rights and a federal forum for their vindication. In so doing, it provided a more generous choice of forum than would have been available at that time under the general venue statute. Compare Act of March 3, 1911, c. 231, §§ 50, 51, 36 Stat. 1101. Though one aspect of the special venue provision was phrased in terms of "residence," which as applied to a corporate employer was then generally understood to mean the place of incorporation, see *In re Keasbey & Mattison Co.*, 160 U. S. 221, 229, the statute also permitted suit in the district where the principal office of the employer was located. See p. 203, *supra*. Moreover, there is nothing in the legislative history of this provision of the Jones Act [4] to indicate that its framers meant to use "residence" as anything more than a referent to more general doctrines of venue rules, which might alter in the future.[5]

---

[4] Section 688 was enacted as § 33 of the Merchant Marine Act, 1920, 41 Stat. 1007. The Act was primarily concerned with the creation and maintenance of a national merchant marine fleet. The substantive part of § 33, dealing with seamen's relief, was introduced in the Senate as an amendment to the House bill, and was passed without discussion. 59 Cong. Rec. 7044 (1920). The venue provision was added by the House-Senate Conference Committee, see H. R. Rep. No. 1107, 66th Cong., 2d Sess., 19–20 (1920).

[5] We do not think these conclusions are vitiated by the fact that application of the wider residence definition of § 1391 (c) to the Jones Act makes the alternative "principal office" venue provision

The sole authority that might be thought to stand in the way of reading the Jones Act to embrace the residence definition of § 1391 (c) is *Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U. S. 222. A consideration of the setting in which that decision was made reveals that it must be taken as limited to the particular question of statutory construction presented there. *Fourco* concerned the interrelation of § 1391 (c) and the special venue provision governing patent infringement suits, 28 U. S. C. § 1400 (b) (1964 ed.). The Court held that the new definition of residence in § 1391 (c) was not carried over into §1400 (b). This holding, however, was based on factors inapplicable to the case before us today.

First, the patent venue section at issue in *Fourco* was itself revised in 1948 [6] in the same Act that contained § 1391 (c). *Fourco* did not directly concern itself with the scope of § 1391 (c). Rather, the Court inquired into the evidence revealing congressional purpose with respect to changes in § 1400 (b), and concluded that Congress wished it to remain in substance precisely as it had been before the revision. This legislative background of § 1400 (b) is of no relevance of course to a determination of the effect of § 1391 (c) on the Jones Act, for the latter's venue provision was not re-enacted contemporaneously with § 1391 (c). Thus, there is nothing to show a congressional purpose negativing the more natural reading of the two venue sections together.

of the latter statute superfluous as regards corporate employers. That provision continues to serve its original purpose when the defendant employer is not a corporation. Nor does the § 1391 (c) provision come into conflict with "principal office," unless that provision is deemed to have been *restrictive* in its origins, a proposition for which no support can be found.

[6] It reads: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Second, the decision in *Fourco* relied heavily on the revisers' purpose to maintain § 1400 (b) as it had been interpreted in *Stonite Prods. Co.* v. *Melvin Lloyd Co.,* 315 U. S. 561. In *Stonite* this Court recognized that there were particular reasons why Congress had passed the predecessor of § 1400 (b). Confusion had been engendered by judicial decisions holding that patent infringers could be sued wherever they might be found, even though a newly enacted general venue statute of 1887 provided more limited venue. See 315 U. S., at 563–565. The patent infringement venue statute was enacted in 1897, 29 Stat. 695, specifically to narrow venue in such suits. This Court in *Fourco,* after determining that the 1948 revision of § 1400 (b) was meant to introduce no substantive change in the provision, was merely following the purpose and letter of the original enactment.

The Jones Act venue provision presents quite a different history. As a minor provision in a major substantive enactment, no particular attention was directed to its terms; indeed, the venue provision was first presented in the report of the House-Senate Conference Committee, see H. R. Rep. No. 1107, 66th Cong., 2d Sess., 19–20 (1920), and was apparently never discussed in committee reports or on the floor of either House. Thus, it is unlikely that the Congress meant to infuse the concept of corporate residence with any special meaning that should remain impervious to changes in standards effected by more general venue statutes. Moreover, it can be said with reasonable certainty that the provision was intended to liberalize venue, see *supra,* p. 205, unlike the patent infringement rule which was meant to constrict it. We conclude that here, in contrast to the situation dealt with in *Fourco,* the basic intent of the Congress is best furthered by carrying the broader residence definition of § 1391 (c) into the Jones Act.

*Affirmed.*