Chester V. NEWTON, Gary W. Davis,
Frank Vinson and Arthur Vinson

v.

INTER-AMERICAN, INC.

B. W. Temples, Garnishee.

Shreveport Airport Authority, Intervenor.

Albert L. Bourgeois, Intervenor.

Civ. A. No. 12567.

United States District Court
W. D. Louisiana,
Shreveport Division.

Nov. 7, 1969.

Dan A. Spencer, James E. Franklin, Jr., Shreveport, La., for plaintiffs.

Charles B. Peatross, Wilkinson, Woods, Carmody, Meadows & Hall, Shreveport, La., for defendant.

John Gallagher, Gallagher & Gallagher, Shreveport, La., for intervenors Shreveport Airport Authority.

Albert L. Bourgeois, in pro. per.

Donald E. Walter, U. S. Atty., and Dosite H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for the United States Marshal.

## OPINION

**DAWKINS, Chief Judge.**

This diversity action was begun when plaintiffs, residents of Oklahoma, caused defendant's aircraft to be seized by virtue of a writ of attachment issued from this Court. Defendant, Inter-American, is a Kansas corporation whose only property in Louisiana was the aforementioned Boeing 307. (Because the aircraft was deteriorating rapidly while in the custody of the United States Marshal, all parties to this suit, with full reservation of their rights, agreed to its sale at public auction. Thus the dispute here is over the proceeds of that sale now in the Registry of this Court.)

All four plaintiffs assert defendant owes them money for wages and salaries. Plaintiff Frank Vinson also claims Inter-American is indebted to him in the sum of $17,000 by virtue of four promissory notes held by him.

█ Defendant initially filed a motion to dismiss and subsequently filed supplemental motions, including a motion to dissolve the attachment. Among the medley of reasons asserted in its first motion to dismiss, Inter-American pleaded that this Court lacked jurisdiction over the subject matter as to three of the plaintiffs since their individual claims did not exceed $10,000.[1] We hold that this contention is correct and dismiss the claims of plaintiffs Newton, Davis, and Arthur Vinson.

As recently as March, 1969, the Supreme Court considered and rejected arguments advancing various theories which would allow the aggregation of individual claims to establish the requisite amount in controversy. After citing predecessor statutes fixing the jurisdictional amount, the Court said:

" * * * The traditional judicial interpretation under all of these statutes has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement. * * *

" * * * In 1911 this Court said in Troy Bank v. G. A. Whitehead & Co. [222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81]:

" 'When two or more plaintiffs, having separate and distinct de-

---

1. 28 U.S.C. § 1332. In addition to statutory penalties and attorney's fees, these three plaintiffs' basic claims are as follows: Chester V, Newton, $2,100.00; Gary W. Davis, $500.00; Arthur Vinson, $2,500.00.

mands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount * * *.' "

Snyder v. Harris, 394 U.S. 332, 335, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)

The only remaining plaintiff, Frank Vinson, clearly has a claim in excess of $10,000; consequently this Court has jurisdiction over the subject matter as to him. Thus, we must inquire whether any of the other grounds asserted by defendant in its motion to dismiss are effective against Frank Vinson. We turn first to the question of venue.

■ Inter-American claims it cannot be sued in the Western District of Louisiana since it is a Kansas corporation, is not licensed to do nor is it doing business in Louisiana.[2] Plaintiff asserts that Inter-American was trying to sell the aircraft in Louisiana and therefore was "doing business" here, thus falling within the ambit of the federal venue statute. Vinson correctly points out that a federal court may allow application of a state "long-arm statute" in diversity cases to determine what degree of activity constitutes "doing business." Additionally, he notes that Louisiana courts have applied this State's long-arm statute most liberally. See Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir. 1968).

■ Vinson fails to note an important distinction. State long-arm statutes are utilized to effect service of process on a non-resident. The "doing business" provisions of such laws must be construed within the limits of federal due process,[3] and admittedly Louisiana courts have been very liberal in their interpretation of what amounts to "doing business." However, what constitutes "doing business" for purposes of the

federal venue statute is strictly a federal question:

"* * * Whether a corporation is present and 'doing business' within the forum district so as to subject it to suit therein is essentially a question of fact which must be decided under federal law." Frazier, III v. Alabama Motor Club, Inc., 349 F.2d 456, 458 (5th Cir. 1965).

This is as it should be since the "doing business" provision of 28 U.S.C. § 1391 was incorporated therein by Congress to enable a foreign corporation to be sued in a place other than its State of incorporation or where it was licensed to do business. Congress deemed it inequitable to permit a foreign corporation to disregard the licensing laws of a State, conduct extensive activities therein, and still not be amenable to suit in that venue. Thus, 28 U.S.C. § 1391(c) was amended to include the "doing business" section:

"The effect of § 1391(c) was to broaden the general venue requirements in actions against corporations by providing a forum in any judicial district in which the corporate defendant 'is doing business.' See Moore, Commentary on the Judicial Code 193–194 (1949); 1 Barron & Holtzoff, Federal Practice and Procedure § 80, at 386 (Wright rev. 1960). It seems manifest that this change was made in order to bring venue law in tune with modern concepts of corporate operations. * * *." Pure Oil Co. v. Suarez, 384 U.S. 202, 204, 86 S.Ct. 1394, 1395, 16 L.Ed.2d 674 (1966).

■ It is our belief that there must be more than a single transaction in a state before a corporation will be held to be "doing business" for purposes of the venue statute:

"There is no exact formula under which the question can be decided.

2. 28 U.S.C. § 1391(c).

3. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

To reach the proper answer, consideration must be given to such relevant factors as the general character of the corporation, the nature and scope of its business operations, the extent of the authorized corporate activities conducted on its behalf within the forum district, the continuity of those activities, and its contacts within the district." *Frazier, supra*, 349 F.2d page 459.

"In determining whether, in fact, a company transacts business in a particular judicial district, the sum total of sundry relevant activities considered in light of the circumstances of the particular case is more the question than the predomination of one factor over another." School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006 (E.D. Pa.1967).

■ Consequently, even if Inter-American were in Louisiana attempting to sell its aircraft, we hold that this did not amount to "doing business" in the sense required by 28 U.S.C. § 1391(c).

■ Defendant filed its original motion to dismiss this suit February 9th, 1967. March 23rd, 1968, Inter-American filed a supplemental motion to dismiss based on *res judicata* as the result of a State Court's disposition of a suit, by holding that it had no jurisdiction, involving the same matter as in this case. However, when filing the latter motion, defendant appeared "solely for the purpose of this supplemental motion" * * "and without in any manner subjecting defendant to the jurisdiction of this Court." Thus, plaintiff's contention that by this latter motion defendant made a general appearance in this suit and thereby waived its objection to venue is untenable.

■ Lastly, Vinson urges that the venue of this action is proper in that two of the original plaintiffs asserted a lien upon property which was located in this judicial district. 28 U.S.C. § 1655. The two plaintiffs referred to, Chester Newton and Gary Davis, have heretofore been dismissed from this action because their claims did not meet the requisite jurisdictional amount. This is essential to invoke 28 U.S.C. § 1655. Omaha National Bank of Omaha, Neb. v. Federal Reserve Bank, 26 F.2d 884 (8th Cir., 1928) cert. denied Wyoming National Bank of Casper, Wyoming v. Omaha National Bank, 278 U.S. 615, 49 S.Ct. 19, 73 L.Ed. 539 (1928).

Whether the remaining plaintiff, Vinson, may utilize 28 U.S.C. § 1655 to establish venue in this Court is a question easily answered. In August, 1969, this Court ordered briefs on the question of proper venue of this action. It was only in this brief, filed September 8, 1969,—almost three years after filing of the original petition in this suit—that this plaintiff attempted to invoke § 1655. Neither in his original petition nor through any other means has plaintiff attempted to follow the procedure required by Section 1655, which provides, in part:

"In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

"Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks."

■ Rather than follow the procedures outlined in this statute, plaintiff utilized the attachment provisions of

Louisiana law.[4] Although Rule 4(e) of the Federal Rules of Civil Procedure allows such action, still there must be compliance with appropriate venue requirements:

> "Under this rule, since the court obtains original quasi in rem jurisdiction by attachment and garnishment, *in personam* jurisdiction over the defendant is not necessary. However, the plaintiff must still satisfy both subject matter jurisdictional requirements and requirements of venue. 2 Moore's Federal Practice, § 4.32[2], pp. 1236–1237; 1 Barron & Holtzoff, Federal Practice & Procedure (1964 Supp.), § 183, p. 284; Notes of Advisory Committee on Rules, 28 U.S.C.A. (1964 Supp.), Rule 4, p. 26." Great American Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997, 1007 (8th Cir. 1965).

Thus, this District Court is improper venue for Vinson's action as instituted. Moreover, he never has complied with any of the notice provisions contained in 28 U.S.C. § 1655, *supra*.

██ The federal statute may not be used generally to permit actions by attachment in which a lien upon a certain piece of property would be fixed for the first time. *Cf.* Dormitzer v. Illinois & St. L. B. Co., 6 F. 217 (C.C.Mass.1881); Davis v. Ensign-Bickford Co., 139 F.2d 624 (8th Cir. 1944); Hegarty v. Luff, 169 F.Supp. 873 (D.C.D.C.1958); McQuillen v. National Cash Register Co., 112 F.2d 877 (4th Cir. 1940) cert. denied 311 U.S. 695, 61 S.Ct. 140, 85 L.Ed. 450 (1940); McNulty v. Heine, 137 F.Supp. 508 (D.C.Md.1956).

For the foregoing reasons, we hold that the Western District of Louisiana is not the proper venue for Vinson's action and consequently we dismiss his claim.

Since the claims of all plaintiffs have been dismissed because of improper venue or lack of jurisdiction, it is unnecessary to reach or consider the other grounds asserted by defendant in its various motions. However, there are two collateral matters as to which disposition must be made.

This Court allowed an informal intervention concerning a mechanic's lien filed in this Court by a custodian of the aircraft while it was under attachment. The intervention asserted a claim for various custodial services.

██ Neither this Court nor the United States Marshal appointed the custodian, Bourgeois. He was appointed by Dan A. Spencer, counsel for plaintiffs, to take the place of the original keeper. The record contains a copy of the letter, making the noted substitution, from Spencer to the United States Marshal. Since Spencer agreed to pay the original keeper, as shown in the Marshal's appointment of custodian, it must be presumed that he also agreed to pay the substitute. In any event, defendant in no way assumed liability for such costs, especially since it has been shown here that the initial attachment was improper. Consequently, Bourgeois has no legal right to any of the proceeds of the sale of the aircraft, and must look to plaintiffs or their attorney for payment.

Finally, the Shreveport Airport Authority intervened to assert a claim and alleged landlord's privilege resulting from its charges for parking of the aircraft during the period of attachment.

██ Because the original attachment was improper, Inter-American should not be required to pay parking fees incurred through no fault of its own. Consequently, we hold that the Shreveport Airport Authority is not entitled to any of the proceeds derived from sale of defendant's aircraft.

The costs of the Marshal's sale already have been received by the Marshal from the proceeds of the sale of the aircraft, and only the balance remains in the

---

4. La.C.C.P. Art. 3541 *et seq.*

Registry of this Court. For all of these reasons, we conclude that Inter-American, Inc., is entitled to be paid the remainder of the proceeds held in the Registry of the Court.

An appropriate order should be presented.