**Edgar F. ANDERSON, Plaintiff,**

v.

**MATSON NAVIGATION CO., San Francisco, California, and the owner and operator of the Vessel S. S. LURLINE, Defendant.**

**No. 5–71 Civ. 49.**

United States District Court,
D. Minnesota,
Fifth Division.

Dec. 27, 1971.

Courtney, Gruesen & Petersen, by James J. Courtney, Jr., Duluth, Minn., for plaintiff.

Van Evera, Mundt, Koskinen, Clure & Andrew, by Thomas A. Clure, Duluth, Minn., for defendant.

NEVILLE, District Judge.

Plaintiff, a resident of Duluth, Minnesota, has brought this action against Matson Navigation Company under the Jones Act, 46 U.S.C. § 688, alleging personal injuries which occurred to him on or about April 23, 1969 while he was a seaman aboard the S. S. Lurline, owned by the defendant, and at the time sailing the high seas between California and Hawaii. He also alleges a second count of unseaworthiness and in a third count prays for maintenance and cure. Defendant has brought a motion to dismiss for lack of jurisdiction and/or venue in this court. It stands admitted that defendant is a California corporation, has not had any employees or offices in Minnesota, neither owns nor leases property in Minnesota, has not qualified as a foreign corporation to do business, has no telephone, bank account, nor other connection with this state. The defendant operates no ships on the Great Lakes and thus does not make Duluth a port of call and has no docking nor port facilities at Duluth.

Plaintiff has filed an affidavit in which he asserts his Minnesota resi-

dence and his affiliation with the M.F. O.W. Union, San Francisco, California. He began sailing for defendant in 1968 and on December 24, 1969, following a period of non-employment, the Chief Engineer of a vessel owned by defendant called him by telephone in Duluth from California, requesting him to return to work. This he did. He alleges that sometime following his injuries on or about April 23, 1969 it was necessary for him to return to Minnesota where he now is receiving medical treatment and presently is unable to work. It would thus appear that defendant's only connection with Minnesota was and is this telephone call.

At the oral argument on the motion to dismiss, plaintiff's counsel advised of certain interrogatories which were extant, the answers to which he stated would tend to show a further connection or at best minimal contacts with Minnesota. Answers have now been served and are in the file. In the court's judgment they do not establish any further or sufficient contacts with Minnesota. They do record that defendant deals with a National advertising agency which may have advertised in Minnesota and that an independent agency of Transpacific Passenger Conference handles reservations and tickets through independent travel agencies. All cargo from Minnesota shippers—and a list of some 40 such is attached to the interrogatory answers—is accepted by defendant on the west coast into vessels sailing from ports in the states of California, Oregon and Washington. Defendant has no employees or personnel in Minnesota soliciting such business. Defendant asserts that it extended no credit to anyone in Minnesota nor has it retained any collection agency. These answers do not establish such "minimal contacts" with the State so that it can be said to be "doing business" in Minnesota in the view of this court.

Service of process on defendant was attempted under one of the Minnesota long-arm statutes, Minn.Stat. § 303.13, by delivering the summons and complaint to the Minnesota Secretary of State. This statute provides for such service in Subd. 1(3):

> "If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation . . . ."

Minnesota's other long arm statute, i. e., Minn.Stat. 543.19 tracks Section 303.13 to some extent but provides for service of process personally upon the defendant out of state. Here no such service was attempted by this plaintiff, though it would seem that had it been it would have been no more effective than the type of service that was in fact attempted, because to be subject to service under Sec. 543.19 a corporation must be one which

> "(b) Transacts any business within the state or
>
> .    .    .    .    .    .
>
> (d) Commits any tort outside of Minnesota causing injury or property damage within Minnesota, if, (1) at the time of the injury, solicitation or service activities were carried on within Minnesota by or on behalf of the defendant, or (2) products, materials or things processed, serviced or manufactured by the defendant were used or consumed within Minnesota in the ordinary course of trade."

The court is aware that the Minnesota Supreme Court has stated in Hunt v. Nevada State Bank, 285 Minn. 77, 172 N.W.2d 292 (1969), cert. denied Burke v. Hunt, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970), that it will extend jurisdictional limits to the constitutional maximum permitted under International Shoe v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945).

Analyzing the two long arm statutes however, and assuming *arguendo* that personal service outside the State of Minnesota also had been made under Section 543.19 as well as under Section 303.13, it seems clear to the court:

1. Under Section 303.13 defendant did not make a contract with plaintiff performable in whole or in part in Minnesota. The services of plaintiff as an employee were to be rendered on the west coast and on the high seas, and though no particular comment was made in oral argument, if the court reads 46 U.S.C. § 682 et seq. correctly, it is clear plaintiff's wages would have to be paid, as surely must be the custom, at least when plaintiff's employment ceased and not later sometime sent to Minnesota.

2. Defendant did not commit a tort in whole or in part in Minnesota. The alleged tortious conduct, took place at sea in the Pacific Ocean and by no stretch could it be said to have been committed in Minnesota.

3. Under Section 543.19, subd. 1(b) it cannot be said defendant transacted or transacts any business in Minnesota. A mere telephone call is not sufficient; nor does the fact that some of defendant's literature may be distributed by independent travel agencies in Minnesota who book and sell tickets on defendant's line nor does the booking of freight from Minnesota shippers constitute such, where defendant maintains no agents, office or personnel in Minnesota and acts only through independent contractors.

4. Under Section 543.19, subd. 1(d), defendant's alleged tort did not cause "injury or property damage within Minnesota". Again, the alleged tort was on the high seas and the fact that plaintiff subsequently returned to Minnesota and here is suffering is not "injury or property damage in Minnesota."

The court does not believe that due process is satisfied by such a service of process as was attempted in this case under International Shoe v. State of Washington, *supra*; see McNeely v. Clayton & Lambert Mfg. Co., 292 F. Supp. 232 (D.Minn.1968), for a discussion of the *International Shoe* and other cases, including the leading Eighth Circuit case of Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965).

As a matter of venue, see Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), the Jones Act, 46 U.S.C. § 688, provides:

"Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

Plaintiff now is well within the Statute of Limitations for commencing another suit and can do so in the proper district where service of process can be obtained. The broadened concept of 28 U.S.C. § 1391(c) providing that a corporation may be sued in any judicial district in which it is doing business begs the question for it is clear to the court as above stated that defendant does not do business in Minnesota. Since jurisdiction cannot be conferred upon this court if in fact it does not exist, the court would be doing a distinct disservice to plaintiff to hold for sentimental or other reasons that it had jurisdiction and would try the case and then, when the statute of limitations had run, discover that defendant could make a successful challenge at an appellate level or otherwise on the court's jurisdiction.

A separate order dismissing plaintiff's complaint has been entered.