Alan **DUBNICK**, Plaintiff,

v.

**FIRESTONE TIRE AND RUBBER COMPANY OF CALIFORNIA, a Division of the Firestone Tire and Rubber Company, Defendant.**

No. 71 C 1599.

United States District Court,
E. D. New York.

March 1, 1973.

Burke & Sullivan, Valley Stream, N. Y., for plaintiff.

Baer & Marks by George H. Colin, New York City, for defendant.

Equal Employment Opportunity Comm'n, as amicus curiae by Donald A. Derfner, District Counsel, Oceanside, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, a former employee of Firestone Tire and Rubber Company of California ("Firestone"), now residing and employed in this District, commenced this action under Title VII of the Civil Rights Act of 1964 ("Act"), 42 U.S.C. § 2000e et seq., on December 10, 1971. On the previous day, December 9, he had commenced an identical action in the United States District Court for the Northern District of California.[1] Both actions were instituted in order to protect plaintiff's right to sue "in the appropriate Federal District Court" within 30 days of receipt of notice from the Equal Employment Opportunity Commission (EEOC). Firestone has moved pursuant to Rule 12(b)(3), F.R.Civ.P., to dismiss this action for improper venue or, alternatively, to transfer it pursuant to 28 U.S.C. § 1404 to the Northern District of California because Firestone, its witnesses and the relevant records are concededly within that District.

The complaint and annexed exhibits contain the following facts which are deemed uncontroverted for purposes of this motion. Firestone, a corporation engaged in an industry affecting commerce, had employed plaintiff in its Salinas, California, facility from February 1967 until discharging him on March 9, 1970. He was originally hired as a safety inspector, but in July 1968 was promoted to Supervisor, Factory Employment, the position he held at the time of his discharge.

On May 22, 1970, plaintiff, then still residing in California, filed written charges with EEOC in San Francisco, alleging he had been unlawfully discharged because he opposed Firestone's policies and practices which he felt were discriminatory against blacks.[2] EEOC, as required by the Act, first referred the charges to the Fair Employment Practice Commission of the State of California. On June 22, 1970, however, plaintiff's charges were formally filed with EEOC, whose San Francisco district office subsequently conducted an investigation reflected in its Regional Director's Findings of Fact dated December 16, 1970 (Complaint, Exh. B). The Regional Director found *inter alia* that plaintiff "was not discharged for the reasons stated by" Firestone; and that the latter's "failure to enforce its equal employment policy has resulted in Blacks not being hired into positions of responsibility."

On November 10, 1971 EEOC's San Francisco office advised plaintiff, who had meanwhile obtained other employment in New York, that a satisfactory settlement with Firestone could not be reached. A notice of right-to-sue was accordingly sent to his New York attorney on the same date.[3] Thereafter

---

1. Dubnick v. Firestone Tire and Rubber Company of California, Civil Action File No. C–71–2356, hereinafter referred to as the "California action."

2. The Act, 42 U.S.C. § 2000e–3(a), provides in pertinent part:
    "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . be-

cause he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter."

3. 42 U.S.C. § 2000–5(e) reads:
    "If . . . the Commission has been unable to obtain voluntary com-

plaintiff commenced the California action and this action to enjoin Firestone from continuing its alleged discriminatory policies and practices, to compel plaintiff's reinstatement in his former position or its equivalent, and to recover compensatory damages of $500,000 and punitive damages in like amount.

Defendant contends dismissal of this action is mandated by special venue provisions of the Act that clearly define and limit the judicial districts in which action may be brought. Section 2000e–5(f) specifies three optional venue districts and a fourth alternative if the employer cannot be found in any of the first three.[4] They are:

(1) " . . . the State in which the unlawful employment practice is alleged to have been committed. . .",

(2) " . . . the judicial district in which the employment records . . . are maintained. . ."

(3) " . . . the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice. . .", or

(4) " . . . if the [employer] is not found within [(1), (2) or (3)] such an action may be brought within the judicial district in which the [employer] has his principal office."

The complaint and annexed EEOC exhibits clearly show that the Northern District of California is a district which satisfies all venue criteria specified in (1), (2) and (3 above. Plaintiff con-

cedes that "defendant's alleged unlawful employment practices did unquestionably occur within the venue of the District Court of the Northern District of the State of California."[5] It is also the district where "[t]he employment records relevant to such allegedly unlawful practice are maintained" and where "[t]he defendant may be found" with respect to Salinas, California, the place of plaintiff's employment by Firestone.[6] The parties have also stipulated as a fact that Firestone's "principal office is in Akron, Ohio," *supra* n. 6.

This district, on the other hand, satisfies none of the Act's venue conditions unless the court accepts plaintiff's invitation, supported by EEOC as amicus, to read into the complaint facts which are not alleged and insert into the Act provisions never placed there by Congress. Thus plaintiff's opposing affidavit asserts that he sought new employment in California after his discharge but was unsuccessful because of unfavorable reference letters Firestone sent to prospective employers. The same thing occurred, he states, when he sought employment in the New York-New Jersey area. He obtained his present job, he avers, only because he did not list Firestone as a reference.

None of the foregoing asserted facts appears in or can fairly be inferred from the allegations of plaintiff's complaint, which is properly limited to the charges investigated by EEOC. But even assuming *arguendo* the truth of such facts, they cannot be considered "a continuing unlawful practice" by Fire-

---

pliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge. . . ."

4. 42 U.S.C. § 2000e–5(f) reads in full:
"Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are

maintained and administered, or in the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

5. Memorandum in Opposition to Motion to Dismiss, unnumbered third page, second full paragraph.

6. Stipulation of facts dated February 7, 1972, pars. 2, 4.

stone under the Act. Section 2000e–3(a) plainly expresses the purpose and intent of Congress to proscribe discrimination by employers against "employees" or "applicants for employment" on grounds of race or color or because they have "opposed" or exercised lawful procedural rights against such practices. The remedial purposes of the Act will be fully served by adjudication of the issues tendered by the present complaint, which adequately sets forth the statutory gravamen of the action as embraced in the charges plaintiff filed with EEOC. He will be "entitled to judicial review of all grounds of employment discrimination alleged in his complaint to the EEOC. . . ." Green v. McDonnell Douglas Corp., 463 F.2d 337, 342 (8 Cir. 1972). His affidavit assertions of post-employment misconduct by Firestone, if proven, may possibly be relevant to the issue of damages arising from delay in procuring new employment should plaintiff succeed on his statutory claim; they are not additional causes of action under the Act which create venue in this district.

■ EEOC, as amicus, urges that whether or not the facts satisfy the venue requirements of the Act, "the trend in judicial thinking is to broaden the special venue provisions in Federal statutes by reading [28 U.S.C.] § 1391(c) into them wherever possible."[7] EEOC recognizes that "trend" was not followed with respect to this Act in Stebbins v. State Farm Mutual Automobile Insurance Co., 134 U.S.App.D.C. 193, 413 F.2d 1100, cert. denied 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969). There the court, dealing with the venue question, held that the general corporate venue statute, § 1391(c), did not permit escape from the limited venue provisions prescribed by Congress in § 2000e–5(f). The court there noted also that the al-

ternative venue reference to "his principal office" was significantly more restrictive than "any judicial district in which [an employer] is incorporated or licensed to do business or is doing business", the language found in § 1391(c).

EEOC argues that Stebbins relied exclusively on Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), which held that a specific venue provision defining residence for patent infringement cases could not be supplemented by the new and broader definition in § 1391(c). EEOC points out that the Supreme Court subsequently limited Fourco "to the particular question of statutory construction presented there." Pure Oil Co. v. Suarez, 384 U.S. 202, 206, 86 S.Ct. 1394, 1396, 16 L.Ed.2d 474 (1966). In Pure Oil the Court held that the special venue provisions of the Jones Act are supplemented by the general corporate venue statute. In so holding, the Court found the "thrust [of the Jones Act] was not primarily directed at venue, but rather at giving seamen substantive rights and a federal forum for their vindication." Id. at 205, 86 S.Ct. at 1396. But the Court did not overlook legislative history in explaining the different result in Fourco. As it pointed out, both 28 U.S.C. § 1400(b), the patent venue statute, and § 1391(c) were revised in the same Act of Congress adopted in 1948. The Court concluded that Fourco properly recognized a Congressional purpose to limit patent infringement suits so as to overcome confusion "engendered by judicial decisions holding that patent infringers could be sued wherever they might be found. . . ." Id. at 207, 86 S.Ct. at 1397. That reasoning is instructive here.

■ Title VII of the Civil Rights Act of 1964 was unquestionably designed to give victims of unlawful discrimination

7. EEOC Memorandum in Opposition to a Motion to Dismiss as Amicus Curiae, pp. 3–4. 28 U.S.C. § 1391(c) provides in pertinent part:
  "A corporation may be sued in any judicial district in which it is incor-

porated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

in employment "substantive rights and a federal forum for their vindication," to use *Pure Oil's* phrasing. Equally "it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law." Voutsis v. Union Carbide Corp., 452 F.2d 889, 892 (2 Cir. 1971), quoting from Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

But the question remains, where is the private litigation to be instituted? Congress provided the answer in the Act itself by defining the venue requirements clearly and precisely. The careful attention given to venue manifests an intent to encourage resort to federal court injunctive powers to swiftly remedy discriminatory employment practices in those local areas where they were occurring and dissolve their effects by "affirmative action", e. g., reinstatement with back pay and hiring of aggrieved litigants, 42 U.S.C. § 2000e–5(g). The thrust of the Act is not monetary damages as in the Jones Act.

While legislative history is scant concerning the venue provisions, what there is supports the conclusion that "actions will be brought either in the judicial district where either [sic] the unlawful employment practice is alleged to have been committed or in the judicial district in which the charged party has his principal office." [8] Major congressional statements made while the Act was under debate also reinforce the view that the district of "unlawful employment practice" was broadened to assure full access to courts in the areas involved. The district of "principal office", on the other hand, was designed to facilitate the transfer provisions of 28 U.S.C. §§ 1404 and 1406,[9] not to open the door to the application of § 1391(c).

The adoption of EEOC's suggestion could well engender the same kind of confusion Congress found it necessary to correct in patent infringement litigation. While EEOC stresses the alleged economic necessity of plaintiffs in this type of case and the hardship of litigating this case in a court 3000 miles away, those are arguments more properly directed to Congress. It is noteworthy, however, that EEOC's own "Notice of Right-To-Sue" form issued to plaintiff advised him to take the notice "to the Clerk of the Federal District Court nearest to the place where the alleged discrimination occurred." [10] This is some indication of administrative interpretation consistent with the clear language of the Act. Finally, Congress recently focussed again on the special venue provisions of the Act and confirmed their applicability as originally enacted in granting new enforcement powers to EEOC to bring an action for temporary or preliminary relief in a district court. Public Law 92–261, effective March 24, 1972, adding new section 706(o) to the Act, 42 U.S.C. § 2000e–5(f)(3).[11]

8. Legislative History of Titles VII and XI of the Civil Rights Act of 1964, a compilation of EEOC. Reference at p. 2167 to House Labor Committee Report No. 1370, 87th Cong. 2d Sess., to accompany H.R. 10144, Equal Employment Opportunity Act of 1962.

9. *Id.* at 3006, 3018–3019, 3044, 3054.

10. Exhibit annexed to plaintiff's complaint herein.

11. See U.S.Code Cong. and Admin.News, 92nd Cong., 2d Sess., 1972 p. 2163. The analysis of that Section reads:
    "Section 706(o).—New Section. When after the filing of a charge, the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to preserve the power of the Commission to grant effective relief, it may bring an action for appropriate temporary or preliminary relief in the district court for the district where the unlawful employment practice is alleged to have been committed, or in the district where the aggrieved person would have been employed, or if the respondent cannot be found in these districts, in the district where the respondent has his principal office."

Accordingly, defendant Firestone's motion is granted to the extent of transfering this action pursuant to 28 U.S.C. § 1406 to the Northern District of California and otherwise denied.