William **RODRIGUEZ**, Plaintiff,

v.

George Herbert Walker **BUSH,**
et al.   **Defendants.**

No.  Civ.A.  04–4952.

United States District Court,
E.D. Pennsylvania.

May 2, 2005.

Philip J. Berg, Law Offices of Philip J. Berg, Lafayette Hill, PA, for Plaintiff.

Viveca D. Parker, US Attorney's Office, Philadelphia, PA, for Defendants.

## MEMORANDUM

ROBRENO, District Judge.

## I.  INTRODUCTION

Plaintiff, William Rodriguez, is a former maintenance worker at the World Trade Center (WTC) in New York, New York. Plaintiff was present in North Tower of the WTC on the morning of September 11, 2001 and is reported to have heroically assisted in rescuing persons from the North Tower after American Airlines Flight 11 crashed into it at 8:46 a.m.[1]

Plaintiff has filed suit against fifty-six named government officials/entities, including the President of the United States and other high government officials (the "Government Defendants"), and one hun-

---

1.  The complaint alleges that, "[o]n 9–11 Rodriguez single-handedly rescued fifteen (15) persons from the WTC, and—as Rodriguez was the only person at the site with the master key to the North Tower stairwells—he bravely led firefighters up the stairwell, unlocking doors as they ascended, thereby aiding in the successful evacuation of unknown hundreds of those who survived.... Rodri-guez, at great risk to his own life, reentered the Towers three times after the first, North Tower impact ... and is believed to be the last person to exit the North Tower alive, surviving the building's collapse by diving beneath a fire truck.  After receiving medical attention at the WTC site for his injuries, Rodriguez spent the rest of 9–11 aiding as a volunteer...."  Compl. ¶¶ 1, 2.

dred John Doe defendants. Based on the September 11 attacks and the defendants' alleged participation therein, plaintiff alleges violations of numerous statutes in his thirteen-count, two-hundred-and-eleven-page complaint. Among them are violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–68 (RICO), the Anti–Terrorism Act (ATA), 18 U.S.C. §§ 2331–39, and various other criminal statutes for which, unlike RICO and the ATA, there exists no private right of action. According to the complaint:

> The essence of Plaintiff's complaint is that a classic RICO "Enterprise," having gained control of key offices and instrumentalities of the United States government ... and the Armed Forces, are guilty of (among other crimes that are "predicate acts" under RICO) kidnapping [sic], arson, and murder including but not. limited to, the carrying out of the 9–11 terror attacks that resulted in the death of nearly 3,000 persons.

Compl. ¶ 88. Plaintiff contends that, because of the September 11 attacks, he lost his job at the World Trade Center and suffered personal injuries. Compl. ¶¶ 3, 35.

The Government Defendants, who are the only defendants to have been served with process, have responded with a motion to dismiss or transfer. They contend the case should be dismissed for lack of subject matter jurisdiction or transferred to the Southern District of New York (SDNY) in accordance with the provisions of the Air Transportation Safety and System Stabilization Act of 2001 (ATSSSA).[2]

The parties submitted briefs on the issue of subject matter jurisdiction and the propriety of venue in this district, and the court heard oral argument on these issues. After consideration of the arguments raised in the briefs and fleshed out at oral argument, and upon review of the relevant legal authority, the court will transfer the case to the Southern District of New York.

## II. DISCUSSION

### A. *Lack of Subject Matter Jurisdiction*

ATSSSA vests original and exclusive jurisdiction in the courts of the SDNY to hear claims of the type asserted by plaintiff. ATSSSA § 408(b). Congress enacted ATSSSA on September 22, 2001, in response to the September 11 terrorist attacks. One of the primary purposes of ATSSSA is "to provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorist-related aircraft crashes of September 11, 2001." ATSSSA § 408. To effectuate this purpose, Congress expressly created an exclusive cause of action over which the courts of the SDNY would have exclusive jurisdiction:

> There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001.... [T]his cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.
>
> .     .     .     .     .
>
> Jurisdiction. The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-

---

**2.** Pub.L. No. 107–42, 115 Stat. 230 (Sept. 22, 2001), as amended by the Aviation and Transportation Security Act, Pub.L. No. 107–71, 115 Stat. 597 (Nov. 19, 2001) (codified at a note to 49 U.S.C. § 40101).

related aircraft crashes of September 11, 2001.

ATSSSA § 408(b).

■■■ The parties dispute whether ATSSSA applies to plaintiff's claims. Resolution of this dispute centers on whether plaintiff's claims "result from or relate to" the September 11 attacks. "The preeminent canon of statutory interpretation requires [courts] to presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (citation and quotation marks omitted). If the text of the statute is unambiguous, a court's inquiry begins and ends with that text. *Id.; Ki Se Lee v. Ashcroft*, 368 F.3d 218, 222 (3d Cir.2004). A court discerns "[t]he plainness or ambiguity of statutory language ... by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir.2004) (citation omitted).

■■ The text of ATSSSA vests the SDNY with original and exclusive jurisdiction over all actions "resulting from or relating to" the September 11 attacks. The apparent breadth of this jurisdictional grant has raised questions.[3] Some courts have declined to construe "resulting from or relating to" broadly to encompass, for example, a construction worker's claim for personal injury that occurred while he cleaning up debris from the WTC site, *see Graybill v. City of New York*, 247 F.Supp.2d 345 (S.D.N.Y.2002), or a dispute between two reinsurance companies over claims resulting from the September 11 attacks, *see Can. Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52 (2d Cir.2003). These cases reveal that courts are unlikely to ascribe a mere "but for" meaning to the phrase "resulting from or relating to" the September 11 attacks.

This court need not, however, delineate the precise contours of the phrase "resulting from or relating to" because, in this case, plaintiff's cause of action plainly results from and relates to the September 11 attacks. Plaintiff contends that he "lost his employment of 19 years and his means of earning a living as a direct result of the attacks on the WTC on 9–11." Compl. ¶ 3. He further alleges that he "suffered personal injuries ... as [a] proximate result[ ] of the 9–11 attacks on the WTC." Compl. ¶ 35. Plaintiff was present and working at the WTC when the planes crashed into it and apparently engaged in heroic efforts to assist firefighters in finding and escorting occupants out of the building. Thus, plaintiff's loss of job and personal injuries, in this case, are a direct and immediate

3. Argument over the scope of such language has divided courts in at least one other significant context—*in personam* jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). *Helicopteros* coined the phrases "specific jurisdiction" and "general jurisdiction," the former phrase applying where, among other things, jurisdiction over a defendant "arises out of or relates to" the defendant's contacts with the forum. *Id.* at 414 n. 8, 9. The disagreement between the majority and dissent in *Helicopteros* exemplifies the difficulty in applying open-natured language, such as "arising from" or "relating to," to a particular set of facts. *Compare id.* at 1872–73 (Blackmun, J.) ("All parties to the present case concede that respondents' claims against Helicol did not 'arise out of,' and are not related to, Helicol's activities within Texas"), *with id.* at 1875 (Brennan, J., dissenting) (criticizing the majority for "refus[ing] to consider any distinction between contacts that are 'related to' the underlying cause of action and contacts that are 'give rise' to the underlying cause of action, and concluding that the respondent's claim was 'significantly related' to the undisputed contacts between Helicol and the forum").

result of the September 11 attacks.[4] Because plaintiff is a direct and immediate victim of the September 11 attacks, his cause of action results from and relates to the September 11 attacks. *See Graybill,* 247 F.Supp.2d at 348–49 (explaining that ATSSSA's "Title IV[, Victim Compensation,] addresses the most immediate victims of the terrorist attacks: those who died on board the hijacked jetliners, those who died or were injured when the jetliners hit the World Trade Center towers and the Pentagon, and those who died or were injured when the World Trade Center towers collapsed").

■ At oral argument, plaintiff conceded that his claims indeed "result from or are related to" the September 11 attacks, within the meaning of ATSSSA's exclusive-jurisdiction provision, Section 408(b)(3). He argued, however, that notwithstanding Section 408(b)(3), this court may assert jurisdiction because plaintiff's claim falls within Section 408(c), entitled "Exclusion." This argument must fail based on a reading of Section 408 as a whole.

Section 408(a)(1) provides,

Liability limited to insurance coverage. Notwithstanding any other provision of law, liability for all claims . . . arising from the terrorist-related aircraft crashes of September 11, 2001, against an air carrier, aircraft manufacturer, airport sponsor, or person with a property interest in the World Trade Center, on September 11, 2001, . . . shall not be in an amount greater than the limits of liability insurance coverage maintained by that [defendant.]

ATSSSA § 408(a)(1). Further, Section 408(c) provides,

Nothing in this section shall in any way limit any liability of any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act.

*Id.* § 408(c).

A reading of Section 408 as a whole shows that Section 408(c) is not an "exclusion" from 408(b)'s exclusive-jurisdiction provision. Rather, Section 408(c) serves to eliminate Section 408(a)(1)'s limitation of liability if the defendant is "a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act." Therefore, even if plaintiff could demonstrate the Government Defendant's complicity in the September 11 terrorist attacks, that putative complicity would eliminate any limit on the Government Defendant's prospective liability. However, complicity *vel non* is not a factor relevant to whether the SDNY has exclusive jurisdiction to resolve disputes that result from or are related to the September 11 attacks. ATSSSA § 408(b)(3).

■ Plaintiff also points to the decision of the District Court of the District of Columbia in *Burnett v. Al Baraka Investment and Development Corp.,* 274 F.Supp.2d 86 (D.D.C.2003). The plaintiffs

---

4. Because the extent of plaintiff's physical injury is unclear, it is also unclear whether plaintiff would have qualified as an "eligible person" had he pursued the administrative avenue for recovery by submitting a claim to the Special Master. Section 405(c) of ATSSSA requires an individual to have, among other things, "suffered physical harm or death as a result of . . . [the] air crash[es]." Plaintiff's entitlement to be compensated from the Victim Fund is of little significance, though. As Judge Hellerstein of the SDNY stated, "the language of section 408(b)(3) of the Act[, which provides exclusive jurisdiction in the SDNY,] is general and broad, and is not limited, neither on its face nor by the statutory context, to the class of 'eligible individuals' who may seek compensation from the Fund. The Act instead reaches any suit that alleges a claim 'resulting from or relating to the terrorist-related aircraft crashes' of September 11, and a district judge should give effect to that broader jurisdictional grant." *Graybill,* 247 F.Supp.2d at 349.

in *Burnett*, like plaintiff in the present case, were victims of the September 11 attacks who, based on those attacks, alleged violations of the Anti–Terrorism Act (ATA), 18 U.S.C. §§ 2331–39 (among other allegations). *Id.* at 91. The defendants moved to dismiss, arguing, *inter alia*, that Section 408(b)(3) of ATSSSA vests the SDNY with "exclusive jurisdiction over claims arising from the September 11 attacks." *Id.* The court concluded that Section 408(b)(3) did not divest it of subject matter jurisdiction over the plaintiffs' claims, reasoning that Section 408(b)(3) must be narrowly construed to prevent it from conflicting with the ATA's broader venue provision.[5] *Id.* at 95. The *Burnett* court reasoned that "[c]onstruing the ATSSSA's exclusive jurisdiction language to encompass claims against the September 11 terrorists and their conspirators would bring the ATSSSA irreconcilably into conflict with the ATA['s venue provision]." *Id.*

■ The court respectfully disagrees with the reasoning in *Burnett*. To say that two statutes are in irreconcilable conflict because "the two statutes produce differing results when applied to the same factual situation," states no more than the problem. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155, 96 S.Ct. 1989, 48

L.Ed.2d 540 (1976). Rather, as the U.S. Supreme Court has instructed,

> The "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *United States v. Fausto*, 484 U.S. at 453, 108 S.Ct. 668. *This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand.* As we recognized recently in *United States v. Estate of Romani*, "a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it has not been expressly amended."* 523 U.S. at 530–531, 118 S.Ct. 1478.

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (emphasis added).[6]

On point is *Radzanower*, which involved the issue of the appropriate venue in a case against a national bank charged with violating the Securities and Exchange Act of 1934 (the "'34 Act"). *Id.* at 149. Under the '34 Act, the more general venue statute, suit could be commenced in any judicial district where the alleged violation occurred. *Id.* (citing 15 U.S.C. § 78aa).

---

**5.** The ATA's venue provision, enacted in 1992, permits a plaintiff suing for a violation of the ATA to bring suit "in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a).

**6.** The principles articulated in *Brown & Williamson Tobacco Corp.* are particularly applicable in reconciling venue provisions. Although Section 408(b)(3) of ATSSSA refers to "exclusive *jurisdiction*," the provision is, at bottom, a directive that the SDNY be the exclusive *venue* for the federal causes of action to which ATSSSA applies. *See, e.g., Pure Oil Co. v. Suarez*, 384 U.S. 202, 203, 86 S.Ct.

1394, 16 L.Ed.2d 474 (1966) ("Preliminarily it should be noted that although [the relevant] provision [of the Jones Act] is framed in jurisdictional terms, the Court has held that it refers only to venue...."). "As a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295–96 (3d Cir.2004) (citation omitted). Interpreting Section 408(b)(3) of ATSSSA to supplement the ATA's venue provision is particularly appropriate here given that Congress has limited the scope of Section 408(b)(3) to cases resulting from or relating to a single nucleus of fact—the September 11 attacks.

Under the National Bank Act, a suit against a national bank could be brought only in the district in which the defendant national bank was established. *Id.* (citing 12 U.S.C. § 94).

Faced with this apparent conflict between statutes, the Supreme Court relied upon a well-rehearsed principle of statutory construction: "Where there is no clear intention otherwise, a specific statute[, the National Bank Act,] will not be controlled or nullified by a general one, [the '34 Act,] regardless of the priority of enactment." *Id.* at 153, 96 S.Ct. 1989 (citing *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)).[7] Applying this principle, the Court found that although different results were obtained by applying the two statutes at issue, the statutes were not irreconcilable. The National Bank Act was established to address the "particularized problems" of the national banks. *Id.* at 154, 120 S.Ct. 1291.

By contrast, the '34 Act was intended to promote fair dealing in the securities markets. *Id.* Thus, application of the narrower statute (the National Bank Act), allowing suits only where the defendant national bank was established, would not "unduly interfere" with the '34 Act's general goal of regulating the securities markets. *Id.* at 156–57, 120 S.Ct. 1291.

Similarly here, ATSSSA's narrower exclusive-jurisdiction provision "specifically address[es] the topic at hand," *Brown & Williamson Tobacco Corp.*, 529 U.S. at 143, 120 S.Ct. 1291, i.e., a one-time event, and its application is limited to the narrow band of cases arising from the September 11 attacks. ATSSSA § 408(b)(3). The congressional judgment to centralize in one judicial district all cases "resulting from or relating to" the September 11 attacks is amply supported by considerations of consistency of judgments and efficient judicial administration.[8] On the

---

**7.** It is true that the order in which the specific and general statutes were enacted in *Radzanower* differs from the order of enactment in the present case. However, consistent with the canon of construction pronounced in *Radzanower*, the specific statute in the present case, ATSSSA § 408(b)(3), will not be controlled or nullified by the general one, the ATA, *regardless of the priority of enactment.*

**8.** Judge Hellerstein of the SDNY, who appears to have decided many of cases resulting from or relating to the September 11 attacks, recently recognized Congress's intent behind granting the courts of the SDNY exclusive jurisdiction over such September 11 cases. *See In re September 11th Liability Ins. Coverage Cases*, No. 03–0332(AKH), 2005 WL 425267, at *4 (S.D.N.Y. Feb. 23, 2005). In that recent case, Judge Hellerstein observed:

There are currently pending before this Court related to the terrorist-related aircraft crashes of September 11th, 2001: 103 personal injury and wrongful death cases under Master Calendar 21 MC 97, 28 property damage cases related to the collapse of WTC 1 and 2, two property damage cases related to the collapse of WTC 7, and over

800 cases filed under Master Calendar 21 MC 100 dealing with workers at the WTC site who claim respiratory injuries, and representations that twice to three times that number are likely to be filed.

*Id.* n. 3. Further,

The entire purpose of assigning these cases to a single judge, pursuant to the Congressional intent expressed in the Air Transportation Safety and System Stabilization Act that the exclusive jurisdiction to hear such cases shall be in the United States District Court for the Southern District of New York, 49 U.S.C. § 40101, is to achieve such integrated management.

*Id.* at *4 (citing *In re September 11th Liability Ins. Coverage Cases*, 333 F.Supp.2d 111, 117–18 (S.D.N.Y.2004)) (Hellerstein, J.); *see also Goodrich Corp. v. Winterthur Int'l Am. Ins. Co.*, No. 5:02–367, 2002 WL 31833646, at *3 n. 4, 2002 U.S. Dist. LEXIS 11448, at *11 n. 4 (N.D. Ohio June 17, 2002) (stating that the requirement that cases resulting from or relating to the September 11 attacks be consolidated in the SDNY "ensures consistency in judgments and also promotes efficiency through familiarity with the facts of the September 11, 2001 terrorist attacks").

other hand, the ATA addresses not a discrete event, but the broader universe of international terrorism. *See* 18 U.S.C. §§ 2331(1), 2332b. Thus, the application of Section 408(b)(3) of ATSSSA in this case, i.e., to a direct and immediate victim of the September 11 attacks only, does not "unduly interfere" with the general goals of the ATA.

Having concluded that plaintiff's claims "result from or are related to" the September 11 attacks, this case must, under § 408(b)(3) of ATSSSA, be dismissed or transferred, as the SDNY has exclusive jurisdiction over plaintiff's claims.[9]

### B. *Transfer to SDNY*

■ Title 28 United States Code Section 1631 permits a court that lacks jurisdiction (subject matter or *in personam*) to transfer a case to a district where the case could have originally been brought:

> Whenever a civil action is filed in a court as defined in section 610 [i.e., a federal court] of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Transfer pursuant to this section is appropriate where (1) jurisdiction is wanting in this court, (2) transfer is in the interest of justice, and (3) the action could have been brought in the transferee court at the time it was filed in this court. *See, e.g., Engelhard Indus., Div. of Engelhard Corp. v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 45, 49 (3d Cir.1983) ("Because the Eleventh Circuit has jurisdiction over the Secretary's petition, and because we find that transfer would be in the interests of justice, we will order this action transferred pursuant to our authority under § 301 of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 55 (to be codified at 28 U.S.C. § 1631).") (internal citation omitted).

The above three required elements are present here. One, for the reasons stated above, Section 408(b)(3) of ATSSSA deprives this court of jurisdiction to adjudicate the matter. Two, transfer to the SDNY is in the interest of justice because, as Congress has determined, adjudicating all claims arising out of the September 11 attacks in one forum—the SDNY—provides the most efficient resolution of such

---

9. The legislative history of ATSSSA, though sparse, supports this conclusion. One day before ATSSSA was enacted, Senator Charles Schumer explained during a debate: "It may be a little unclear to some whether all lawsuits or just lawsuits against the airlines will be situated in the Southern District of New York. The intent here is to put all civil suits arising from the tragic events of September 11 in the Southern District." 147 Cong. Rec. S9589, S9592 (Sept. 21, 2001) (statement of Sen. Schumer). This intent was echoed by Senator John McCain: "[T]he bill attempts to provide some sense to the litigation by consolidating all civil litigation arising from the terrorist attacks of September 11 in one court." *Id.* S9594. Senator Orrin Hatch also repeated this intent: "For those who seek to pursue the litigation route, I am pleased that we consolidated the causes of action in one Federal court so that there will be some consistency in the judgments awarded." *Id.* S9595. Ditto for Senator Patrick Leahy: "[A]ll legal cases stemming from these incidents [the September 11 attacks] will be consolidated in the United States District court for the Southern District of New York." *Id.* S9599. The Congressional Record contained no statements to the contrary.

claims and will provide consistency of judgments. *See* Note 8, *supra.* Three, the action could have been brought in the SDNY because, under Section 408(b)(3) of ATSSSA, the SDNY has exclusive jurisdiction over this claim. The elements of Section 1631, having been satisfied, and without objection by the Government Defendants, the case will be transferred to the SDNY.

## III. CONCLUSION

For the foregoing reasons, the court lacks subject matter jurisdiction to adjudicate this case. In the interest of justice, however, the case will be transferred to the SDNY. An appropriate order follows.

### ORDER

**AND NOW**: this **2nd** day of **May, 2005**, upon consideration of the Motion to Dismiss the Complaint or in the Alternative, to Transfer this Case to the Southern District of New York filed by the Government Defendants (doc. no. 3), it is hereby **ORDERED** that the Motion is **GRANTED** for the reasons stated in the accompanying Memorandum of today's date.

**IT IS FURTHER ORDERED** as follows:

1. The case is **TRANSFERRED** to the Southern District of New York;

2. The Clerk is to deliver a certified copy of the docket and the Complaint (doc. no. 1) to the Clerk of the Southern District of New York; and

3. Plaintiff's Motion for Extension of Time to Serve Complaint to Certain Defendants (doc. no. 10) is **DENIED without prejudice** and may be reasserted in the transferee forum.

**AND IT IS SO ORDERED.**