Chester **SANDERS**, Plaintiff,

v.

**SEAL FLEET, INC.**, Southern States Offshore, Inc., and Sealcraft Operators, Inc., Defendants.

No. 1:97–CV–529.

United States District Court,
E.D. Texas,
Beaumont Division.

March 23, 1998.

Steven Carl Barkley, Steven C. Barkley, Beaumont, TX, for plaintiff.

Christopher L. Evans, Meyer Orlando & Evans, Houston, TX, for Seal Fleet Inc., Sealcraft Operators Inc.

Michael B. Hughes, McLeod Alexander Powel & Apffel, Galveston, TX, for Southern States Offshore Inc.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S 12(b)(3) MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER

SCHELL, Chief Judge.

Before the court is Defendant Southern States Offshore, Inc.'s ("Southern States") Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer Venue, filed on October 27, 1997. Plaintiff Chester Sanders ("Sanders") filed a response on December 12, 1997. The court, having determined that a ruling on the motion was premature at that time, ordered the parties to file supplemental briefings with the court by January 30, 1998. See Order, signed December 23, 1997, at 3 (hereinafter "December Order"). Plaintiffs filed a supplemental response on January 30, 1998 ("January Supplement"), and another supplemental response on February 19, 1998 ("February Supplement"). Additionally, argument was heard on this motion in a case management conference held by the court on February 27, 1998.

Upon consideration of the motion, response, supplemental responses, argument, and applicable law, the court is of the opinion that Defendant's Motion to Dismiss should be DENIED, and the alternative Motion to Transfer should be DENIED.

## I. BACKGROUND

Plaintiff Chester Sanders has filed suit against the defendants for injuries suffered while working as an AB seaman. He contends that, at various relevant times, he worked for one or all of the defendants. Sanders' Original Complaint alleges that Sanders suffered a stroke on August 1, 1996.[1] Pl.'s Compl. at 2. He argues that the stroke was proximately caused by Defendants' actions, specifically, not allowing Sanders his scheduled time off to see a doctor. Sanders contends that treatment by a doctor at the time of his original appointment would have prevented the stroke. Sanders claims that he is entitled to recovery for Defendants' failure to provide medical treatment and care. He brings his claims under the Jones Act and under general maritime law. Pl.'s Compl. at 3.

## II. SOUTHERN STATES' CONTENTIONS

Defendant Southern States has moved for a dismissal of the case under FED. R. CIV. P. 12(b)(3), or in the alternative, for transfer of the case to the Southern District of Texas, Houston Division, under 28 U.S.C. § 1404(a). Southern States argues that venue is improper under 28 U.S.C. § 1391(b) since Southern States is a Houston corporation, the other two defendants are Florida corporations, and none of the defendants maintain principal places of business in the Eastern District of Texas. Southern States also argues that venue does not lay in this district because, at the time of his injuries, Sanders was working offshore, beyond the territorial jurisdiction of the United States. Therefore, according to Southern States, the events giving rise to the cause of action did not occur within the Eastern District of Texas. Since none of the defendants were residents of the Eastern District, and since the events leading to the cause of action did not take place in the Eastern District, Southern States maintains that venue is improper.

## III. ANALYSIS OF THE 12(B)(3) MOTION TO DISMISS

■ Title 28, United States Code § 1406(a) instructs the district court to dismiss or transfer a case if venue is improper where filed. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[2] A party may move for dismissal

---

1. There are some inconsistencies between Plaintiff's Original Complaint and Plaintiff's subsequent filings with the court regarding the date of the stroke. See infra note 3.

2. Defendant Southern States was the only defendant to file a 12(b)(3) Motion to Transfer Venue, or in the Alternative, a Motion to Dismiss. In

their Original Answer, however, the remaining defendants, Seal Fleet, Inc., and Sealcraft Operators, Inc. (hereinafter "Seal Fleet defendants"), raised the same venue objections as Southern States. See Seal Fleet and Sealcraft's Orig. Ans. at 1, para. 2. The court will therefore consider the issue joined as to all three defendants, and will refer to them collectively as "Defendants."

of a suit based on improper venue under FED. R. CIV. P. 12(b)(3). The burden to demonstrate why venue is improper and why the forum should be changed lies with the movant. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Myers v. American Dental Ass'n.,* 695 F.2d 716, 724–25 (3d Cir.), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); *Bounty–Full Entertainment, Inc. v. Forever Blue Entertainment Group,* 923 F.Supp. 950, 957–958 (S.D.Tex.1996); *cf. Richards v. Aramark Services, Inc.,* 108 F.3d 925, 928 (8th Cir. 1997) (plaintiff has the burden of proving jurisdiction, and dismissal for lack of venue is proper where jurisdiction does not exist); *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993) (plaintiff has to prove that defendant was unavailable for service).

*A. Jones Act venue vs. Admiralty venue*

■ In this case, Sanders bases his claims under both the Jones Act and general maritime law. Pl.'s Compl. at 3, paras. III, V. Before analyzing whether venue is proper or improper, the court must first determine which venue rules to apply to the different claims. There is a latent conflict between Jones Act venue and admiralty venue, since *Pure Oil v. Suarez,* 384 U.S. 202, 204, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966) specifically applies 28 U.S.C. § 1391(c) to Jones Act cases, while Federal Rule of Civil Procedure 82 specifically precludes the same type of extension to an admiralty case. FED. R. CIV. P. 82 ("An admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action for the purposes of Title 28, U.S.C., §§ 1391–93."). If the court were to exercise its admiralty and maritime jurisdiction under 28 U.S.C. § 1333, admiralty venue provisions must be used for admiralty or maritime claims; the court could not apply the same venue rules that it would for the Jones Act claims. "The venue provisions of the Jones Act apply only to suits at law in the federal courts; they have no application to a suit brought in admiralty[.]" STEVEN F. FRIEDELL, BENEDICT ON ADMIRALTY VOL. I § 127 at 8–29 n. 10 (1997) (citing *McKola v. McCormick S.S. Co.,* 24 F.Supp. 378 (N.D.Cal.1938)).

When both the Jones Act and admiralty jurisdiction are invoked, a problem potentially exists if under one analysis venue is proper, but under another venue is improper. *Cf. Bailiff v. Storm Drilling Company,* 356 F.Supp. 309, 310 (E.D.Tex.1972). In *Bailiff,* for example, the plaintiff claimed damages for personal injury both under the Jones Act and under the court's admiralty jurisdiction. The court noted that there was no controlling authority on whether the venue provisions of the Jones Act or the venue provisions of admiralty jurisdiction should control, if each of the two suggest a different venue. *Id.* at 311. The court determined, however, that venue was proper in the Eastern District under both the Jones Act and admiralty jurisdiction, and therefore the conflict did not need to be resolved. *Id.*

In the instant case, Sanders is suing the various defendants under the Jones Act, 46 U.S.C.App. § 688 *et. seq.* Pl.'s Compl. at 3, Para. III. Second, Sanders claims damages under the general maritime law of the United States. Pl.'s Orig. Compl. at 3, para. V. This presents a problem since neither side has briefed the court on the issue of whether or not admiralty jurisdiction, and thus admiralty venue rules, are applicable in this case. The court must first determine whether Sanders has invoked the admiralty jurisdiction of the court; if the admiralty jurisdiction of the court is not implicated by Sanders' complaint, then admiralty venue rules will not be applicable. The court will focus attention on this issue first.

*B. Admiralty jurisdiction is not invoked in this case, and admiralty venue rules do not apply*

■ In this case, under the totality of the circumstances, the court finds that the admiralty jurisdiction of the court was not invoked.

There are special procedures for invoking the admiralty jurisdiction of a federal district court ... The specific procedures are imposed by Fed.R.Civ.P. 9(h) ... That rule requires that in order to invoke a federal court's admiralty jurisdiction *where there exists an additional ground for federal jurisdiction,* the plaintiff must identi-

fy the claim as one in admiralty to make it plain that he wishes to invoke that jurisdictional basis rather than some other. *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1547 (5th Cir .) (emphasis in original), *cert. denied,* 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). If the claim is one that is recognizable only in admiralty, then the claim is one brought in admiralty or maritime law, whether identified as such or not. *Id.* However, where an alternative ground for jurisdiction exists, such as federal question jurisdiction under 28 U.S.C. § 1331, then the plaintiff must be very clear that admiralty jurisdiction is being invoked. *See Alleman v. Bunge Corp.,* 756 F.2d 344, 345–46 (5th Cir. 1984) (where plaintiff brought a claim in state court under the Jones Act, general maritime law, and under Louisiana state law, the plaintiff had not been specific enough under Rule 9(h) to invoke the admiralty jurisdiction of the federal court, especially since the suit was originally brought in state court). It is the preferred practice to plead Rule 9(h) with specificity in order to make it clear to the court that admiralty jurisdiction is being invoked. 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1313 at 717–19 (1990). But an explicit reference to Rule 9(h) is not necessary as long as the complaint contains a "simple statement asserting admiralty or maritime claims." *Teal v. Eagle Fleet, Inc.,* 933 F.2d 341, 345 (5th Cir.1991); *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585, 587–88 (5th Cir.), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983); *Durden v. Exxon Corp.,* 803 F.2d 845, 848–50 (5th Cir.1986).

▌ In this case, an alternative ground for federal jurisdiction exists other than admiralty jurisdiction. A Jones Act claim may be brought as an action "at law" or it may be brought under the admiralty jurisdiction of the court. *Linton v. Great Lakes Dredge & Dock Co.,* 964 F.2d 1480, 1489 (5th Cir.), *cert. denied,* 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992). It is the seaman's choice as to how the action will be brought. If he sues on the common law side of the court's jurisdiction, he has the right to a trial by jury. *Id.* However, that right is unavailable under the court's admiralty jurisdiction.

*Id.* "Although the Jones Act does not expressly state the fact that the antecedent right implicit in the statute is that of a trial in admiralty, the Supreme Court has said 'the statute leaves the injured seaman free ... to assert his right of action ... on the admiralty side of the court. On that side the issues will be tried by the court, but if he sues on the common law side there will be a right of trial by jury.'" *Id.* (quoting *Panama R. Co. v. Johnson,* 264 U.S. 375, 391, 44 S.Ct. 391, 68 L.Ed. 748 (1924)). A Jones Act claim that is brought "at law" is a common law cause of action codified in a federal statute. Since the cause of action arises from a federal statute, the foundation for its subject matter jurisdiction in a federal court is 28 U.S.C. § 1331, federal question jurisdiction, and not the court's admiralty jurisdiction under 28 U.S.C. § 1333. *Id.* at 1490. The different sources of jurisdiction are the reason that a jury is available under one theory but not available under the other.

Sanders pleaded his causes of action under the Jones Act and under general maritime law, and he requested a jury trial. He has not specifically pleaded Rule 9(h). While the lack of an express reference to Rule 9(h) is not dispositive, it is certainly informative. When coupled with the fact that Sanders requested a jury, the court finds from the totality of the circumstances that Sanders intended to plead his cause of action under the common law side of the Jones Act. *See id.; see also Bodden v. Osgood,* 879 F.2d 184, 186 (5th Cir.1989) (where complaint alleged a claim brought under maritime or admiralty jurisdiction, but was filed in state court and plaintiff failed to object to its removal solely on diversity grounds, the totality of the circumstances indicated that admiralty jurisdiction was not invoked); *Borne v. A & P Boat Rentals No. 4, Inc.,* 755 F.2d 1131, 1132–33 (5th Cir.1985) (where suit is filed in federal court under the Jones Act and general maritime law, jury is requested, and no reference to Rule 9(h) is present, admiralty jurisdiction is not invoked); *cf. Noble Drilling, Inc. v. Davis,* 64 F.3d 191, 195 (5th Cir.1995) (where counterclaim under Rule 9(h) specifically invokes admiralty jurisdiction and no jury is requested, jurisdiction arises from admiral-

ty). Thus, the court finds that Sanders' Jones Act claims and general maritime claims are brought under 28 U.S.C. § 1331 rather than § 1333.

Because Sanders did not declare that he wished to invoke the court's admiralty jurisdiction under Rule 9(h), the court considers the complaint to be brought under § 1331 for the Jones Act claims and for the general maritime claims. Since admiralty jurisdiction is not invoked, then the admiralty venue provisions do not apply. Consequently, the court is not bound by Rule 82 and may apply 46 U.S.C.App. § 688 for the venue determination of the Jones Act claims and 28 U.S.C. § 1391(b) for the venue determination of the maritime claims.

## C. Venue is proper under the Jones Act

Having decided the nature of the claims pleaded by Sanders and the applicable venue rules, all that is left is to apply those rules. The Jones Act contains a special statutory venue provision. Under the Jones Act, "[j]urisdiction ... shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C.App. § 688(a) (1987). This particular provision applies only to venue. *Pure Oil Co. v. Suarez*, 384 U.S. 202, 203, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966).

In applying § 688(a), the Supreme Court has used 28 U.S.C. § 1391(c) to interpret "resides" as it pertains to corporate defendants. *Pure Oil Co.*, 384 U.S. at 203–04. 28 U.S.C. § 1391(c) states that a corporate defendant resides in any judicial district "in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c)(1997). Obviously, this provision means that venue is proper in any district in which the defendant conducts business commensurate to satisfy personal jurisdiction. *See, e.g., Penrod Drilling Company v. Johnson*, 414 F.2d 1217, 1220 (5th Cir.), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 495 (1970); *Pure Oil Co.*, 384 U.S. at 203–04; *Rich v. Southern Gulf Operators*, 879 F.Supp. 49, 51 n. 2 (E.D.Tex.1995).

Sanders argues that the application of § 1391(c) to a corporate defendant means that venue is proper under § 1391(c), and consequently the Jones Act, in every district of the state in which a defendant corporation is incorporated. Pl.'s January Supp. Resp. at 1–2, para. II (citing *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 323–24 (5th Cir.1977), *overruled on other grounds, Culver v. Slater Boat Co.*, 688 F.2d 280, 288 & 310 (5th Cir. 1982), *and overruled on other grounds, Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336–37 (5th Cir.1997)); *see also Barrineau v. Sub Sea Intern.*, 940 F.Supp. 153, 154 (E.D.Tex.1996) (citing *Davis* for the principle that venue is proper against a defendant in any district of a state where the defendant is incorporated). Sanders argues that since Southern States is a Texas corporation, then venue as to Southern States is proper in any district within the state of Texas.

■ The court agrees that the majority rule *was* that a corporate defendant incorporated or licensed to do business in one judicial district of a multi-district state was subject to venue in every district of that state. *See Van's Supply Equipment, Inc. v. Echo, Incorporated*, 711 F.Supp. 497, 500–501 (W.D.Wis.1989) (citing *Davis* and collecting authorities). The court is not convinced that *Davis* still controls, however, in light of the 1988 amendments to 28 U.S.C. § 1391(c). The previous manifestation of § 1391(c) allowed a corporation to be sued "in any judicial district in which it [was] incorporated or licensed to do business ...." *Id.* at 499. However, the Judicial Improvements and Access to Justice Act, Pub.L. 100–702 (Nov. 19, 1988), amended § 1391(c) to its present form. *Id.* at 501. The new § 1391(c) reads, in relevant part:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to

personal jurisdiction if that district were a separate State ...

28 U.S.C. § 1391(c). The change to § 1391(c) has been interpreted to eliminate venue over corporate defendants in districts with which the corporate defendants do not have significant contacts. *Id.; cf. Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 103 n. 5 (5th Cir.) (noting that § 1391(c) has been amended, but refusing to decide the effect of the change in a case filed prior to the amendment's effective date), *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990). According to this restrictive interpretation, venue is only proper in a district where the corporate defendant has significant contacts sufficient to establish personal jurisdiction, were the district its own state. *See Barrineau,* 940 F.Supp. at 154 (citing *Pacas v. Showell Farms, Inc.,* 83 F.3d 415 (4th Cir.1996)); *Rich v. Southern Gulf Operators,* 879 F.Supp. 49, 51 n. 2 (E.D.Tex.1995) (holding that venue is proper in any judicial district in which the corporation is doing business). The court agrees that 28 U.S.C. § 1391(c), as amended, is more restrictive than its predecessor. It is not enough to establish venue in one district of a multidistrict state to simply show that the defendant is incorporated in another district within the same state. Rather, the defendant must have sufficient contacts with the district, contacts that would otherwise justify personal jurisdiction over the defendant within that district.

■ In support of its argument that venue does not lay in this district, Southern States has submitted an affidavit from Edward S. Schreiber, the Vice–President of Southern States Offshore, Inc. Def.'s Mot., Ex. A. Prior to assuming his current post on September 1, 1996, Schreiber was the Vice–President of Sealcraft Operators, Inc. for ten years. *Id.* Schreiber states that Southern States is a Texas corporation, but that its principal place of business is in Houston, in the Southern District of Texas. He also states that, at least through August 1996, Sealcraft Operators, Inc. and Seal Fleet, Inc. had their principal place of business in Galveston, Texas, also in the Southern District of Texas, and since then the two companies have moved their principal places of business to Florida. Finally, he states that at no time during the events relevant to this lawsuit did any of the defendants have or maintain an office in the Eastern District of Texas. *Id.*

Significantly, Schreiber's affidavit does not deny that the Defendants engaged in business in the Eastern District of Texas. Nor does it deny that the Defendants had sufficient contacts to establish personal jurisdiction in this district. Meanwhile, Sanders has submitted evidence to the court that Seal Fleet flew Sanders into Port Arthur, Texas, within the Eastern District of Texas, on the day he suffered his stroke. Pl.'s February Supp., Ex. B. Thus, Sanders places Seal Fleet within the personal jurisdiction of the Eastern District of Texas on the date of the events giving rise to the cause of action. If the company flew one of its employees to a hospital within the district in order to receive medical treatment, then it was conducting activities within the district such that it could reasonably be expected to be haled into court here. In short, some of Seal Fleet's actions within the Eastern District of Texas are at the heart of the events giving rise to this lawsuit, which is more than enough to establish specific personal jurisdiction in this case.[3]

As stated above, the residence requirement of 46 U.S.C.App. § 688 is satisfied if a defendant is within the personal jurisdiction of the court. If Seal Fleet was doing busi-

---

3. Sanders has submitted copies of the deck logs for *Sword Dancer,* which is apparently the location where Sanders was working when he reported a numbness in his left arm and left leg. Pl.'s February Supp., Ex. B. He was transported from *Sword Dancer* to a hospital in Port Arthur, Texas, which is within the Eastern District of Texas. *Id.* This evidence tends to indicate that Seal Fleet was doing business within the Eastern District of Texas when the events giving rise to this cause of action occurred and that some of the events giving rise to this cause of action occurred within the District. The problem is that the deck logs submitted by Sanders detailing the day of his injury list the date as October 1, 1996. Sanders' Original Complaint, meanwhile, states that Sanders suffered the stroke on August 1, 1996. Pl.'s Orig. Compl. at 2, para. II. The court hereby ORDERS Plaintiff to file an amended complaint setting out the alleged facts and dates in a clear manner so as to prevent confusion.

ness within the Eastern District on the date of the events in question, then Seal Fleet was subject to the specific personal jurisdiction of this court, and therefore resided in the Eastern District for the purposes of § 688. Defendants, who have the burden of proving improper venue, have submitted no evidence to the contrary. For the foregoing reasons, venue is proper under the Jones Act and Southern States' Motion to Dismiss for Improper Venue as to the Jones Act claim is hereby DENIED.

### D. Venue is proper for the general maritime claims

■■■ Sanders has included a statement in his complaint that purports to invoke the "General Maritime law" of this court. Pl.'s Orig. Compl. at 3, para. V. In this case, however, the court found that Sanders did not make a claim under the court's admiralty jurisdiction under FED. R. CIV. P. 9(h). A plaintiff can bring an action under the Jones Act and under general maritime law without invoking the admiralty jurisdiction of the federal court. *Linton*, 964 F.2d at 1491. Instead, the court will consider Sanders' general maritime claims under 28 U.S.C. § 1331 as a matter of federal common law. *See* Section III(B), *supra.*

■■■ In the absence of the admiralty jurisdiction, the court can claim subject matter jurisdiction outside of § 1333, and can invoke the general venue provisions of § 1391. Having decided that the proper venue provision for Sanders' general maritime claims is § 1391(b), the analysis is nearly the same as in Section C, *supra.* Southern States has offered evidence that no defendant had or maintained an office within the Eastern District of Texas. Therefore, according to Southern States, no defendant is a resident of the Eastern District and thus venue is improper under 28 U.S.C. § 1391(b). However, there is evidence that a substantial part of the events giving rise to this claim occurred in the Eastern District of Texas. Thus, there is at least a *prima facie* case that venue is proper under § 1391(b)(2). Defendants' 12(b)(3) motion to dismiss for improper venue is therefore DENIED.

### IV. 28 U.S.C. § 1404(a) MOTION TO TRANSFER VENUE

■■■ Title 28, U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1997). In deciding whether to transfer venue, the trial court must exercise its discretion in light of the particular circumstances of the case. *Radio Santa Fe v. Sena*, 687 F.Supp. 284, 287 (E.D.Tex.1988). The burden is on the moving party to establish why there should be a change of forum and the court should not transfer venue when the result would be to shift the expense and inconvenience from one party to another. *Enserch Int'l. Exploration v. Attock Oil Co.*, 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987). Generally, there is a "strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159, 1163 (5th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

■■■ The factors a court may consider include: (1) the plaintiff's choice of forum; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the accessibility and location of sources of proof; (5) the location of counsel; (6) the relative congestion of the courts' dockets; (7) accessibility of the premises to jury view; (8) relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit; and (9) the time, cost, and ease in which the trial can be conducted, and all other practical considerations relative to the trial. *See e.g., Lindloff v. Schenectady Intern.*, 950 F.Supp. 183, 185–86 (E.D.Tex.1996) (weighing a combination of factors); *Fletcher v. Southern Pac. Transp. Co.*, 648 F.Supp. 1400, 1401 (E.D.Tex.1986) (collecting authorities). The district court's determination to transfer a case will be reversed only for an abuse of discretion. *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 738 (5th Cir.), *cert. de-*

*nied,* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

In the Southern States affidavit, Schreiber states that Sanders was hired by the Galveston, Texas, offices of Sealcraft Operators, Inc. Def.'s Mot., Ex. A at 1, para. 1. He also states that Sanders went to work for Southern States on August 16, 1996, and that as of that date he was "hired by and reported to the Houston office of Southern States Offshore, Inc." *Id.* at 2, para. 4. Finally, Schreiber states: "At no time during the dates referred to in this lawsuit did either Seal Fleet, Inc., Southern States Offshore, Inc., and/or Sealcraft Operators, Inc. have or maintain an office in the counties which comprise the Eastern District of Texas." *Id.* at 2, para. 5.

Plaintiff's Original Complaint shows that he resides in Woodville, Tyler County, Texas, which is within the Eastern District of Texas, albeit in the Lufkin Division. Moreover, Sanders has provided some evidence to the court that he was transported to a hospital in Port Arthur, within the Eastern District, at the time of the incident in question. Pl.'s February Supp. at Ex. B. The court can therefore assume that some witnesses and medical evidence will come from within the Eastern District.

Sanders lives within the Eastern District and the Eastern District is his chosen forum, which is entitled to some weight when the plaintiff is a resident of the forum in which the suit is filed. Therefore, this factor weighs against a transfer. There is evidence before the court that some witnesses and parties are inside the Eastern District, which would lend them more easily to testifying at trial. Therefore, the factors regarding the convenience of witnesses weigh against a transfer also. Further, there is some evidence that Sanders was taken to a hospital within the Eastern District when his stroke occurred. Therefore, some of the events leading to the cause of action may have occurred in the Eastern District. This means that the ease and location to sources of proof weighs against a transfer, and that the members of the community have an interest in the outcome of this case, which also weighs against a transfer.

Plaintiff's counsel is located in Beaumont in the Eastern District, but Defendants' counsel is located in Houston and Galveston in the Southern District. The distance between Houston, Galveston, and Beaumont is not so great as to provide a hardship to counsel; therefore, that factor does not favor granting or denying the transfer. The court is also aware that all federal court dockets are crowded, so that factor does not weigh in favor of granting or denying transfer either. The court does recognize, however, that the case has already been filed in the Eastern District, and therefore keeping the case in the Eastern District will eliminate any delay that might occur from the transfer.

It is the court's opinion that this case should not be transferred. The balance of convenience and justice has not been shown to weigh strongly in favor of Defendants moving for a transfer. Taking into consideration all of the relevant 1404(a) factors in this case and the evidence supporting each, Defendant's Motion to Transfer Venue under 1404(a) is DENIED.

## V. CONCLUSION

For the foregoing reasons, Defendant Southern State's Motion to Dismiss for Improper Venue is DENIED, and the Alternative Motion to Transfer Venue to the Southern District of Texas, Houston Division, is hereby DENIED. It is so ORDERED.